EPPERSON *v.* HELBRON.

Opinion delivered November 1, 1920.

1. MINES AND MINERALS—FORFEITURE OF GAS LEASE—ENFORCEMENT
IN EQUITY.—Though, in general, equity abhors a forfeiture, it will enforce forfeiture of an oil and gas lease where it would be inequitable to permit the lessee longer to assert rights under it by reason of his continued default, as the lease yields nothing to the owner unless worked, and is an incumbrance on the land, and to allow the lessee to default might result, in case of a small parcel of land, in its being drained of oil or gas by a well on adjoining land.

2. MINES AND MINERALS—CONSIDERATION OF OIL AND GAS LEASE.—
An oil and gas lease for a term of ten years in consideration of $1, in which the lessee covenanted, in case a well was not completed within one year from date of execution, to pay a fixed sum per annum for each additional year, and to pay a royalty of one-eighth of all the oil, is valid; part of the consideration being the exploitation of the mineral resuorces under the land.

3. MINES AND MINERALS—OIL AND GAS LEASE—EXTENSION PAYMENTS.
—Under an oil and gas lease stipulating that if no well is completed within one year from date it shall become void unless the lessee pays $60 for each additional year, the lessor may declare a forfeiture at the end of the first year unless payment for such extension is made in advance.

4. MINES AND MINERALS—OIL AND GAS LEASE—EXTENSION PAYMENTS.
—Under an oil and gas lease stipulating that if no well is completed within one year from date it shall become void unless the lessee "thereafter" pays $60 for each year "thereafter" completion is delayed, the use of the word "thereafter" does not indicate that the annual rental was not to be paid in advance, but only that the annual rental was not to be paid during the first year of the lease.

5. APPEAL AND ERROR—WHEN DECREE DIRECTED.—Where a chancery case was fully developed below, the Supreme Court will direct the proper decree.

6. MINES AND MINERALS—NOTICE OF FORFEITURE.—In order for a lessor to give notice of a forfeiture of an oil and gas lease, it is sufficient that the notice was given by his attorneys.

7. MINES AND MINERALS—FORFEITURE OF OIL AND GAS LEASE.—Where a lessor was entitled to declare a forfeiture of an oil and gas lease because of the lessee's failure to pay rent in advance, the forfeiture became effective when notice thereof was mailed by the lessor, though the lessee tendered the rent before receiving the notice.

8. MINES AND MINERALS—OIL AND GAS LEASE—PAYMENT OF RENT.—The rule requiring payment of rent in advance to secure extension of an oil and gas lease applies whether the lease is in developed or undeveloped territory.

Appeal from Nevada Chancery Court; *James D. Shaver,* Chancellor; reversed.

STATEMENT OF FACTS.

This was a suit brought in equity by the owner of land to cancel an oil and gas lease covering 120 acres of land in Nevada County, Arkansas, upon the ground that the lessee and his assigns had forfeited the lease.

On the 2d day of December, 1918, B. C. Epperson and W. E. Epperson, his wife, in consideration of $1, leased to H. H. Givan 120 acres of land in Nevada County, Arkansas, for ten years, upon the following conditions: "If oil is found in paying quantities, first party shall have one-eighth part of all oil produced and saved from said premises, to be delivered in pipe line, with which second party shall connect the wells. Second party shall have the right to use sufficient gas, oil and water to drill all wells and to run all necessary machinery in operating same.

568 **Epperson v. Helbron.** [145

"Second party agrees to pay any damage such operations may cause to growing crops.

"In case no well is completed on said premises within one year from this date, then this grant shall become null and void, unless second party shall thereafter pay the first party at the rate of $60 for each year thereafter such completion is delayed, payment to be made by depositing the amount in the Bank of Prescott, Prescott, Arkansas, or by check to first party."

H. H. Givan assigned the lease to R. G. Helbron. On April 19, 1920, B. C. Epperson wrote Helbron a letter in which he declared the lease void, and informed Helbron that he had leased the land to other parties. Epperson claimed that the lease was void because it was conditioned that no well had been commenced on the land and no payment of rent had been made, although more than a year had elapsed since the lease was executed. The letter was duly received by Helbron, and he replied by tendering to Epperson $40, which he claims was the rental due upon the part of the lease which had been assigned to him. Epperson refused to receive the amount tendered by Helbron and returned the check to him. Epperson also informed Helbron in the letter that he had leased the land to another party for the purpose of having it explored for oil and gas.

The agreed statement of facts shows that no well was drilled on the land within the year mentioned in the lease, and that no effort has been since made to drill a well.

The chancellor was of the opinion that there was no equity in the plaintiffs' bill, and it was decreed that their complaint should be dismissed for want of equity.

The plaintiffs have duly prosecuted an appeal to this court.

*McRae & Tompkins,* for appellant.

1. The lease was unilateral. It bound the lessee to do nothing and the lessor was not bound. The lease does not require the lessee to do anything. He is not bound

to begin work on a well or to pay rental. It is entirely optional with him and not binding. 96 Ark. 184. Such leases are void. 159 S. W. 193; 112 Fed. 373. A lease determinable at the will of one party is equally so at the will of the other. 47 Ind. 105; 112 Fed. 373; 131 *Id.* 696. The lessee can not make the contention that the down payment of one dollar paid at the time the lease was executed was a consideration of the lessee's option to extend the lease, as there is no such clause in the present lease. There was no consideration for the lease after the end of the first year if one dollar was a sufficient consideration for the first year. Nothing had been done toward developing the land, and the promise to pay being optional with the lessee, the lessor had clearly the right to withdraw the option after the end of the first year, at any time before the option had been accepted and the rental paid. 132 La. 601; 61 So. 684.

2.   While equity abhors a forfeiture, it will be enforced where essential to do justice. 36 Okla. 773; 59 L. R. A. 566; 96 Pa. 307. Courts do not favor the tying up of lands for long periods of time, especially where the consideration is nominal. 91 U. S. 587. Every contract must be based upon a valuable consideration. The consideration here was $1, and there is no promise on part of the lessee that he will ever do anything; the language of the lease contains no obligation whatever on the part of the lessee. A suit for specific performance would not be entertained on the clause in the lease. While a nominal consideration may be sufficient at law, equity requires a substantial consideration. 202 Fed. 109.

3.   Even if we admit that $1 was a good consideration, it would strain that dollar to keep the lease in force for one year. It could not prolong the life of the lease longer than the first year. The lease itself only provided that the one dollar should keep the lease in force for the first year. The lease carried its own forfeiture clause, and the lessee had the power to continue the lease in force, and knew just what was required but failed to do so, and the lease expired by its own terms

December 2, 1919. Nothing was done to extend it and it expired on that date. The lease was prepared by the lessee and was his contract and any uncertainties or ambiguities should be resolved against him and in favor of the lessor. 115 Ark. 166; 112 *Id.* 1; 84 *Id.* 431; 26 Okla. 772; 25 *Id.* 809. It was a lease for *one year* and it might hold for more, provided the lessee complied with its terms, but to keep it alive the lessee had to act. After the end of the first year, the lease was a mere naked option, and could be withdrawn at any time before it was accepted, and it was so withdrawn before any tender was made. 43 L. R. A. (N. S.) 487. The lessee was not bound. The sum total of his obligations was to pay any damages sustained to the growing crops; there was no other promise on part of the lessee. The only case found construing a lease which merely provided for the rentals to be "thereafter" paid is 79 N. E. 971. The real consideration was that the lessee should develop and explore the land. It was a harsh contract, truly a lessee's lease, and the courts are slow to enforce such; and if the lease was broken by failure of the lessee to bore a well or pay the rental, the lease became null and void and could not later be revived by paying rentals. 70 Kan. 778. The chancellor erred in his construction of the lease and its findings are against the law and justice.

*Carmichael & Brooks,* for appellees.

The lease is not unilateral. 104 Ark. 466, 474; 94 *Id. Huyck & Gray;* 40 Minn. 497. There was mutuality and the lease was bilateral and there was consideration. 3 Am. Law Rep. Ann. 344-8, 352-7. See, also, 138 Ark. 367; 104 Pac. 851-2; 120 Fed. 893; 74 Pac. 625; 63 L. R. A. 625. If the lessee had a whole year in which to pay the money, he was in ample time when he tendered it within four and a half months within the time shown by the agreed statement of facts. The lease was a binding and mutual obligation, and the lessee had a full year after the expiration of the year to complete the well and pay the rentals. The chancellor was familiar with the situ-

ation and held the contract binding and that the tender
was made within a reasonable time, and he was right on
both questions.

HART, J. (after stating the facts.). Counsel for the
plaintiffs contend that no well was completed on the land
within one year from the date of the execution of the
lease, and that by the terms thereof the $60 rental pro-
vided in the surrender clause was payable in advance,
and that the lessor had a right to declare the lease void
for the nonpayment thereof.

It is the contention of counsel for the defendants
that the $60 annual rental was not payable until the end
of the second year after the date of the execution of the
lease, and that the plaintiffs had no right to declare the
lease void for the nonpayment of the $60 before the
payment therefor became due.

That equity will enforce a forfeiture of a lease giv-
ing the exclusive right to explore for minerals upon a
tract of land where it would be inequitable to permit
the lessee longer to assert such right by reason of his
continued default is settled in this State by the case of
*Mansfield Gas Company* v. *Alexander,* 97 Ark. 167.

The reason for enforcing a forfeiture under such
leases is well stated in *Brown* v. *Vandergrift,* 80 Penn.
142. In the opinion Chief Justice AGNEW said: ''The
discovery of petroleum led to new forms of leasing land.
Its fugitive and wandering existence within the limits
of a particular tract was uncertain, and assumed cer-
tainty only by actual development founded upon ex-
periment. The surface required was often small com-
pared with the results, when attended with success;
while these results, led to great speculation, by means
of leases covering the lands of a neighborhood like a
flight of locusts. Hence it was found necessary to guard
the rights of the landowner as well as public interest, by
numerous covenants, some of the most stringent kind, to
prevent their lands from being burdened by unexecuted
and profitless leases, incompatible with the right of
alienation, and the use of the land. Without these

guards, lands would be thatched over with oil leases by subletting, and a farm riddled with holes and bristled with derricks, or operations would be delayed so long as the speculator would find it hopeful or convenient to himself alone. Hence covenants became necessary to regulate the boring of wells, their number and time of succession, the period of commencement and of completion, and many other matters requiring special regulation. Prominent among these was the clause of forfeiture to compel performance and put an end to the lease in case of injurious delay, or a want of success. These leases were not valuable, except by means of development, unlike the ordinary terms for the cultivation of the soil, or for the removal of fixed minerals. A forfeiture for nondevelopment or delay therefore cut off no valuable rights of property, while it was essential for the protection of private and public interest in relation to the use and alienation of property."

It is true that, in general, equity abhors a forfeiture, but not when it works equity and protects a landowner from the laches of a lessee under a lease for exploring for oil and gas. The reason is that a small tract of land could be nearly or entirely drained by wells on adjoining lands, and it is common that leases contain covenants for diligent operation and for forfeiture in case of suspension.

Again, it is said that an oil lease yields nothing to the landowner unless worked, and is an incumbrance on his land, tying his hands against selling or leasing to others. *Munroe* v. *Armstrong*, 96 Penn. St. 307.

This brings us to a consideration of a construction of the terms of the lease. In *Lawrence* v. *Mahoney, ante,* p. 310, the court had under consideration a lease similar to the one in the case at bar in all essential particulars. In that case the court held valid an oil and gas lease for a term of ten years in consideration of $1 under which the lessee covenanted that, in case a well was not completed on the premises within one year

from the date of the execution of the lease, the lease should become null and void unless the lessee should pay a fixed sum per annum for each additional year; that such completion was delayed; and further covenanted to pay the lessor one-eighth of all the oil produced. This principle was involved in the case of *Mansfield Gas Co.* v. *Alexander, supra,* where the court recognized that part of the consideration in such leases is the exploitation of the mineral resources of the land to which the lease relates. Other cases sustaining leases of this character may be found in a case note to *Rich* v. *Donaghey* (Okla.), 3 L. R. A. 352, at pp. 381 and 382.

Counsel for the plaintiffs also seek to reverse the decree on the ground that the $60 annual rental after the first year is payable in advance, and that the plaintiffs had a right to forfeit the lease for the nonpayment thereof. In support of their contention, reliance is placed upon the case of *Sullivent* v. *Clear Creek Oil & Gas Co.,* 138 Ark. 367, in which the court construed a similar lease as giving the lessee the right at the end of the first year to continue the lease to the end of the ten-year period upon the payment in advance of the fixed annual rental until a well was drilled. That case should not control here because the question does not appear to have been duly considered by the court at that time. The language was pertinent to the issues involved, but it does not appear that the attention of the court, or the mind of the judge writing the opinion, was directed to a decision of the question involved in the instant case.

It will be observed that the contract in the present case, in consideration of $1, leases the 120 acres of land for ten years for the purpose of enabling the lessee to explore it for gas or oil and iron ore. The lease is conditioned, however, that, in case no well is completed on the premises within one year from the date of the execution of the lease, then the lease shall become null and void unless the lessee shall thereafter pay the lessor at the rate of $60 for each year thereafter such completion is delayed. The full force of this clause is to give the

lessee the option, by making such payment, to continue
the lease in force to the end of ten years without com-
pleting the first well, or upon failure to make such pay-
ment to allow the lease to become null and void if the
lessor should declare a forfeiture. Under a lease of this
kind the lessee, so long as he pays the rentals in the
manner provided, has an option to continue the lease in
force to the end of the term. The lessee may also ter-
minate the lease at will by a mere failure to pay the
stipulated rent at the time due. The lessor has no right
to terminate the lease as long as the lessee complies with
its terms, but he may declare a forfeiture if the lessee
fails to pay the annual rental when due.

In *Dill* v. *Fraze,* 79 N. E. 971, the Supreme Court
of Indiana construed a clause in a lease, in all respects
similar to the present one, to mean that, in case the lessee
failed to complete a well within the time limit first pro-
vided and desired to continue the lease under the sur-
render clause, he must pay the annual rental in advance.
The reasoning of the court is clearly stated in the follow-
ing language: ''There can be no doubt that the princi-
pal purpose of the appellant in making said contract was
to procure the exploration of his land for oil and gas,
to be followed by the development of it, if circumstances
warranted. The strong implication of the contract was
that this would be done, and it must be construed in the
light of this fact. (Citing cases). While, upon the re-
ceipt of the first year's compensation for delay, the
operator would have been entitled to postpone the be-
ginning of operations, yet it does not admit of question
that it was within the power of appellant, by appropriate
action, to prevent the second party from continuing to
hold the right granted in the land, without exploration
or development, for the whole of the contract period.
The agreement contains an express provision for a for-
feiture if a well is not completed within sixty days, unless
the second party thereafter pays at the rate of $40 per
year for each year such completion is delayed. The unit
of payment was $40, and the question arises as to
whether such payment was to be made in advance. While

the ordinary rule governing rentals is that payment in advance is not required unless so stipulated in the contract, yet, as the endeavor of courts in the enforcement of agreements is to effectuate the intent of the makers, we are of opinion that, in the circumstances of this case, it should be held that it was the purpose of the parties that payment should be made in advance. The situation of appellant must be considered. There was no express agreement on the part of the operator that he would even explore for gas or oil; on the contrary, he had reserved the right, at any time, upon the payment of the nominal consideration of $1, to cancel and annul the contract. He had not agreed that he would pay any sum in the nature of rent. * * * The contract before us distinctly contemplated that a forfeiture should result at the end of sixty days (a well not then being completed), unless the operator paid the consideration for delay. This evidently required him to become an actor if he would save his rights. In such a case the owner has the privilege of declaring the lease forfeited at the end of the time; except as the other party pays the sum stipulated for the delay. The forfeiture must occur, if at all, when the time has elapsed, provided that the owner sees fit to take advantage of it. In these circumstances it would throw the provisions of said contract into hopeless confusion, and would work a great injustice to the owner, to hold that he must wait a year, without even the assurance that the contract would then be complied with.''

The contrary view is maintained by the Supreme Court of Kansas in *Rhodes* v. *Mound City Gas, Coal and Oil Co.*, 104 Pac. 851. The opinion in that case cites the cases of *Mower* v. *Sanford*, 76 Conn. 504, and *Blodgett* v. *Lanyon Zinc Co.*, 120 Fed. 893, to support it. All those cases proceed upon the theory that the ordinary rule governing the payment of rentals should apply, and that is that a contract for the payment of money in fixed installments containing no other provision for the time of payment of such installments than that they are to be paid annually is lawfully performed by the payment of a single installment at the end of each year.

We decline to follow the holding of these cases, and adopt that of the Supreme Court of the State of Indiana, believing it to be the better reasoning. What has been said above on the question of equity following the law and enforcing forfeitures in cases of this kind applies with equal force to this question. Leases of this kind are prepared by the lessee, and holding to a lease after ceasing to search for oil or gas is often for the purpose of speculation. When the lessee is not exploring the land for oil or gas, he is out nothing, and it is valuable to him to hold the lease for the purpose of speculation or to await developments of other persons in that vicinity. Hence we think that time is of the essence of the contract. It was contemplated that the lessee should do the affirmative act of paying the annual rental in advance in order to prevent the lease from being declared forfeited by the lessor.

It is claimed, however, that the word "thereafter" indicates that the annual rental was not to be paid in advance. We do not think that word was inserted for any such purpose. It is used twice and seems to have been used only to show that the annual rental was not to be paid during the first year of the lease. It is a matter of common knowledge that such contention has been made in many instances in similar leases. The lessor was within his rights in declaring the forfeiture of the lease for the nonpayment of the annual rental and the chancery court erred in not so holding. Therefore, the decree will be reversed; and, inasmuch as the case seems to have been fully developed, the chancery court will be directed to enter a decree canceling the lease as prayed for in the plaintiff's complaint.

WOOD, J., dissents.

HART, J. (on rehearing). Counsel for appellees insist in their motion on rehearing that the court's statement of facts with regard to the forfeiture and the rule laid down with regard to it is wrong. The case was tried on an agreed statement of facts, and a re-examina-

tion shows that we correctly stated them in our opinion. It is true that, as insisted by counsel, we stated that on April 19, 1920, B. C. Epperson wrote Helbron a letter in which he declared that the lease was void and informed Helbron that he had leased the land to other parties, when in fact this letter was written and signed by the attorneys of Epperson. Their act, however, was his act.

Again, it is insisted by counsel for appellees that this letter was not received by Helbron until April 22, 1920, and that on April 20, 1920, Helbron wrote Epperson a letter tendering him the rent for the current year. This did not avoid the forfeiture. The forfeiture occurred when the attorneys for Epperson mailed the letter of April 19, 1920, in which the forfeiture was declared. It was not necessary that Helbron should receive the declaration of forfeiture before it became effective. Epperson had the power to declare the forfeiture, and his act in so doing was completed when he mailed the letter. Therefore it did not make any difference that Helbron wrote Epperson a letter tendering the rent before he received Epperson's letter declaring the forfeiture. Again, it is contended that the force of the opinion in *Dill* v. *Fraze,* 79 N. E. 971, is weakened because the Supreme Court of Indiana in that case impliedly overruled the earlier case of *Watson* v. *Penn,* 108 Ind. 21, without mentioning the case. The Supreme Court of Indiana did not overrule the case of *Watson* v. *Penn.* That was an ordinary case of tenancy in which no time was stipulated for the payment of the rent, and the court held that the payment could be made at the end of the year. The reason for the holding was that rent is in its nature a return for the enjoyment of the annual profits of the land. As pointed out in the case of *Dill* v. *Fraze,* a different rule applies in cases of a lease for the contemplated exploration of the land for gas or oil. The conditions existing in such cases require a different rule and form an exception to ordinary cases of tenancy where the object of the lease is for the lessee to obtain possession of the land and use it in return for rent paid.

Again counsel contend that there should be a difference in developed and undeveloped oil territory in this respect. We can see no reason for this distinction. As pointed out in the opinion, the object of the rule is that the lessee should act in the premises by paying the rent in advance, so that the lessor would know whether or not the lessee intended to extend the term of the lease. If he did not, the lessor would then have an opportunity to lease it to some one else for the purpose of having it explored for oil.

Finally, it is insisted that the use of the word "thereafter" gave the lessee until the end of the year within which to pay the rent. We think the use of this word rather indicates to the contrary. It applies to the first thing which the lessee was required to do, towit: the payment of the rent if he desired to continue the lease for another year.

Therefore, the motion for a rehearing will be denied.