HEYDEN v. KENNEDY.

Opinion delivered October 31, 1921.

CHAMPERTY—WHO MAY SET UP.—Where an oil and gas lease stipulated that if no well was completed within one year from the date of the lease the lease should be void unless the lessee should pay an annual rental after the expiration of the first year, it is no defense to a suit by the lessor to cancel the lease for failure to complete a well or to pay the annual rental that the lessor has made a champertous agreement with a third person to develop the oil and gas under the land, as the cause of action does not rest upon the alleged champertous agreement.

Appeal from Nevada Chancery Court, *James D. Shaver,* Chancellor; affirmed.

*Sam M. Wassell,* for appellants.

The contract between Westmoreland and these plaintiffs on behalf of Straughan was one for champerty and maintenance, against public policy, and, notwithstanding the original lessee was not a party to it, surely a court of conscience ought not to lend aid to its enforcement as against the lessee or his assignee. 44 Ark. 473; C. & M. Digest § 1432; 86 Ark. 130; 2 Pomeroy, Eq. Jur. § 874, p. 1805; 2 Vest Sr. 125; 1 Pomeroy, Eq. Jur. 4 Ed. § 397; *Id.* § 398; 27 Cyc. 724; 225 S. W. 345; 129 Ark. 43; 175 N. W. 812; 46 App. D. C. 246; 205 S. W. (Tenn.) 320; 264 Fed. 474; 2 Pomeroy, Eq. Jur. 4 Ed. § 936; *Id.* § 1276; 11 A. L. R. 704, *et seq.;* 211 S. W. 152, 154; 98 Ark. 575; 77 Ark. 444; 169 Fed. 259; 34 Md. 407; 65 Atl. 129.

*Tompkins, McRae & Tompkins,* for appellees.

Appellant is an outside party, in no wise a party to or connected with the alleged champertous contract. That he may not complain of the contract, even if champertous, is settled. 35 L. R. A. (N. S.) 512 and cases cited in note; 117 U. S. 582; 137 Ill. 652; 69 Iowa 296; 112 Ga. 480; 60 Ark. 221; 92 N. W. 230; 14 L. R. A. 785; 44 L. R. A. 285.

SMITH, J. The case of *Epperson* v. *Helbron,* 145 Ark. 566, appears to have been brought as a test case to determine whether the lease therein sought to be canceled, as well as numerous other similar leases, had been forfeited because of the lessees' failure to develop the oil and gas fields as contemplated by the leases. These leases were for a term of years and stipulated for a division of the oil and gas which might be found. There was a stipulation in all these leases that, if no well was completed within one year from the date of the lease, the lease should be void unless the lessee should pay a stipulated rental annually after the expiration of the first year. The rental had not been so paid, and we held in the case cited that, upon the failure to pay in advance, the lease became void, although it was not provided in the lease that the rent should be paid in advance, distinguishing, in this respect, between exploration contracts for oil and gas and the ordinary leases for mere use and occupancy of land.

These leases were made to H. H. Givan, and among other lessors were S. W. Kennedy and Lizzie E. Kennedy, his wife. Kennedy's lease was dated November 29, 1918; the first year was out November 29, 1919, and notice of forfeiture was given by Kennedy on April 19, 1920.

It appears that in March, 1920, Kennedy and numerous other persons who had given Givan leases were solicited by one Westmoreland, on behalf of M. H. Straughan, to execute new leases to Straughan. These leases provided that the lessor should bring suit to cancel the lease previously given to Givan, and that the

expense of the lawsuit should be paid by Straughan, and that Straughan would make a payment of 75 cents for each acre covered by the lease within thirty days after the Givan lease had been declared forfeited by the court in which the suit to cancel had been brought.

The explanation of these contracts with Straughan is that, after obtaining leases, Givan would neither pay rentals nor develop the land, and that Straughan was willing to lease and develop the land, but was not willing to do so until the validity of the Givan leases had been determined.

About sixty persons, who had given leases to Givan, signed contracts with Straughan as set out above at the solicitation of Westmoreland, and about a month later suit was filed to cancel each of the Givan leases, the suit of appellee being among that number. After the institution of these suits, Givan assigned certain of these leases to the appellant Heyden.

There was an agreed statement of facts in which it was stipulated as follows:

"That on the land of R. O. Westmoreland there has been erected a derrick by Givan for the purpose of drilling for oil. That said derrick was erected by Givan after the lease referred to and completed before the forfeiture was declared. But no further work was done towards drilling a well after September 1, 1919, and no well was drilled nor ore mined on the land within the year mentioned in the lease, and no effort has been made since to drill a well on said land of plaintiff.

"That R. O. Westmoreland is one of about fifty plaintiffs bringing suit to cancel leases given to Givan and is the same R. O. Westmoreland who entered into a contract with M. H. Straughan to secure the bringing of suits, and the leases to Straughan.

"That no demand was made by the plaintiffs for these rentals at any time. No notice was given that plaintiffs would demand renewals in advance.

"That at the time of said suit no oil or gas had been discovered in Nevada County.

"That no rentals were tendered until after the bringing of this suit, and such tender was then refused."

The court found, from the pleadings and exhibits and the agreed statement of facts, that "neither defendant H. H. Givan, nor any one for him, began a well upon said land (Kennedy's land) within the time limited in said lease, and that he wholly failed to pay the rentals therein, and that on the 19th day of April, 1920, plaintiffs notified the defendant H. H. Givan that no well had been commenced, and no payment of rental made, that said lease was void."

The court declared the law to be that, as no well was completed upon said land, the payment of rentals to prevent the forfeiture of said lease should have been made in advance, and that, as no such payment was made, said lease was void as far as the same applied to the lands now claimed by the defendants Given *et al.,* and that said lease should be canceled and set aside.

The court thereupon adjudged the lease from Kennedy to Givan to be void and canceled it, and this appeal is from that decree.

For the reversal of this decree it is insisted that the contract, of which Straughan was the beneficiary, was one for champerty and maintenance and was therefore contrary to public policy and void, and that the court should not, for that reason, lend aid to its enforcement, and that the suit of Kennedy should not therefore be entertained by the courts of this State, and a nonsuit should be ordered.

A similar contention was made in the case of *Prosky* v. *Clark,* which was decided by the Supreme Court of Nevada (32 Nev. 441, 109 Pac. 793). This is a well-considered case, and the opinion was based upon the consideration of numerous authorities there cited. The court held (to quote the syllabus): "A nonsuit cannot be granted in an action brought to recover possession of a contract interest in mining claims, because the owner of the interest had made a champertous assign-

ment of a portion of such interest to one who joined in the action, since defendants cannot take advantage of the champerty, and, even though the partial assignment might be void, it will not defeat all right of recovery against defendants.'' This case is annotated in 35 L. R. A. (N. S.) 512, where the editor's note reads as follows: ''It is the general rule that a third person may not take advantage of champerty as against the original owner of the cause of action. This is upon the theory that the cause of action does not in any way rest or depend upon the champertous agreement.'' A very large number of cases are cited in support of this note, and, among others, is the case of *Burnes* v. *Scott*, 117 U. S. 582, where it was held that the making of a champertous, and therefore under the law of the State void and illegal, contract for the prosecution of a suit to collect a promissory note cannot be set up in bar of a recovery on the note. In the opinion by JUSTICE WOOD it was said that the conclusion just stated was reached both upon reason and weight of authority, and that only two cases—and both of them by the Supreme Court of Wisconsin—had been found holding to the contrary.

So, we conclude here that, whether the contract between Kennedy and Straughan be champertous and void or not, that fact cannot be set up in bar of the right of Kennedy to sue on a cause of action to which the alleged champertous contract relates, for the reason that his cause of action does not in any way rest or depend upon his contract with Straughan.

Decree affirmed.