CORDELL *v.* ENIS.

Opinion delivered January 14, 1924.

1. MINES AND MINERALS—FORFEITURE OF OIL LEASE—WAIVER.—The rule that equity will follow the law and declare a forfeiture against defaulting lessees in oil leases wherever inequitable results would follow failure to do so, does not impair the general rule that equity will refuse to enforce forfeitures where there has been a waiver.

2. EQUITY—FORFEITURES.—Equity abhors a forfeiture, and will seize upon slight circumstances indicating a waiver to avoid them.

3. MINES AND MINERALS—WAIVER OF FORFEITURE OF LEASE.—Retention for about a week of a rental check tendered 16 or 17 days after it was due according to the terms of an oil and gas lease before returning it and declaring a forfeiture, *held* a waiver of the forfeiture when the delay in tendering the rent was inadvertent, and where a valuable consideration of $4,000 had been paid for the lease, and the parties lived near each other, and the lessor could have acted promptly.

Appeal from Union Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

*Frank M. Betts,* for appellant.

In view of equity's abhorrence of forfeitures, this is a case which, under the facts, makes peculiarly applicable the principle that a forfeiture will not be declared where it would be unjust, inequitable or unconscionable to do so. 125 S. W. (Ark.) 345; 16 Cyc. 78; 59 Ark. 405; 77 Ark. 168; 220 S. W. 1078; *Id.* 578; 79 Texas 391; 98 Ark. 328. The clause providing for the drilling of a well or payment of rentals is in a subsequent clause, and in direct conflict with the preceding, granting clause, providing that the lease shall remain in force five years and as long thereafter as oil or gas should be produced by the lessee, and is therefore void. *Bodcaw Lumber Co. v. Goode,* 160 Ark. 48; *Graysonia-McLeod Lumber Co. v. Duke,* 160 Ark. 76; 93 Ark. 5; 94 Ark. 615.

*Pat McNalley* and *Robert A. Kitchen,* for appellee.

True that equity abhors forfeitures, but not to the extent that it will deny a forfeiture when, by so doing, it will work inequity and fail to protect a landowner from

laches of the lessee under a lease while exploring for oil and gas. Such leases commonly contain covenants for diligent operation and for forfeiture in case of suspension. Moreover they yield nothing to the landowner unless worked, and are an incumbrance on the land, standing in the way of its sale or lease to others. 96 Pa. St. 307; 225 S. W. 345; 97 Ark. 167; 133 S. W. 837; 177 Pac. 86; 3 A. L. R. 352. Appellant had drawn the lease in question, and the blanks and additions to the agreements and covenants therein were made at her suggestion. The lease therefore, as it now stands, contains an expression of her contract, from which she seeks relief from the court, merely because she neglected to pay the rentals when due, and because her affairs were in such shape that she forgot to pay them. 96 Pa. St. 307; 169 Ind. 53, 79 N. E. 971; 225 S. W. 345, and cases cited. This court has already upheld leases of the same form as the lease in controversy, and there is no merit in appellant's contention that the drilling and rental payment clause is void.

HUMPHREYS, J. Appellees instituted suit against appellant in the chancery court of Union County to cancel an oil and gas lease which they executed to her on a ten-acre tract of land in said county, upon the alleged ground that she failed to drill a well on the land therein described, or to pay rent thereon, within the time specified in the lease.

In apt time appellant filed an answer denying that she had forfeited her contract on account of her failure to drill a well or pay delay rentals, and interposing, among other defenses, a waiver by her to pay delay rentals within the time specified in the lease.

The cause was submitted upon the pleadings and testimony introduced by appellees and appellant, which resulted in a decree canceling the lease, from which is this appeal.

There is no material dispute in the testimony. On the 19th day of February, 1921, appellees executed an oil and gas lease to appellant, who was their friend and neighbor, upon ten acres of land, for a cash consideration

of $4,000, in which she was required to drill a well on said lands or to pay delay rentals thereon of $1 per acre before February 19, 1922. After particularly describing the land, the lease contained the two following clauses pertinent to the issues involved on this appeal:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee."

"If no well be commenced on said land on or before the 19th day of February, 1922, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the Citizens' National Bank of El Dorado, which shall continue as the depository, regardless of changes in the ownership of said lands, the sum of one dollar ($1) per acre, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve (12) months from said date." Appellant did not drill a well or pay the delay rentals prior to the 19th day of February, 1922. Appellees did not declare a forfeiture of the lease for the nonpayment of rent until a check therefor had been received by them for same.

Appellees lived about four miles from El Dorado, and in going to town passed appellant's home. They were good friends, and met each other frequently. Appellant had taught the school patronized by appellees. On March 7, 1922, sixteen or seventeen days after the last day specified in the lease for the payment of delay rentals, appellant mailed appellee, C. F. Enis, a check therefor, which he received not later than March 9. On March 7 appellant had occasion to offer the lease as collateral to her banker, at which time her attention was called to the fact that she had not paid the delay rentals. She had overlooked this clause in the lease, and in an attempt to comply therewith immediately mailed a check to Mr. Enis for the amount. Enis retained the check for about a week, and then mailed it back to appellant, claiming a forfeiture of the lease because the amount

had not been paid or deposited prior to the 19th day of February, 1922. On the day he mailed her the check he passed her home going to El Dorado. He testified that he regarded the check as good and did not return same because it was her personal check, but because she had not sent it within the time specified in the lease.

In the case of *Epperson* v. *Helbron,* 145 Ark. 566, this court had under consideration a lease similar to the one in the case at bar, with one exception. The amount of the cash consideration in the Epperson case was only one dollar, whereas in the case at bar the cash consideration paid by appellant was $4,000. In construing the Epperson lease this court recognized that the drilling of a well in the specified time was a part of the consideration, which could not be avoided except by paying the delay rentals yearly in advance, which were stipulated for in the lease. In construing the lease the court took occasion to say: ''Leases of this kind are prepared by the lessee, and holding to the lease after ceasing to search for oil or gas is often for the purpose of speculation. When the lessee is not exploring the land for oil or gas, he is out nothing, and it is valuable for him to hold the lease for the purpose of speculation, or to await developments of other persons in that vicinity. Hence, we think that time is of the essence of the contract. It is contemplated that the lessee should do the affirmative act of paying the annual rental in advance in order to prevent the lease from being declared forfeited by the lessor.'' For this and other reasons assigned by the court in the Epperson case, courts of equity will follow the law and enforce forfeitures against defaulting lessees in oil and gas leases, where inequitable results follow if they refused to do so. This rule, however, does not impair the general rule that courts of equity will refuse to enforce forfeitures where there has been a waiver thereof. Equity abhors forfeitures and will seize upon slight circumstances indicating a waiver, to avoid or prevent them. In the case at bar appellees retained the check of appellant, covering the contract

rentals for delay in drilling, for about a week before returning same, although living only a short distance from her. In good conscience it was their duty to act promptly. They were not warranted in holding the check for an unreasonable time so that they might speculate upon whether it would be more profitable to declare or not declare a forfeiture of the lease. The retention of the check for this unreasonable length of time constituted a waiver of the forfeiture.

For the error indicated the decree is reversed, and the cause is remanded with directions to dismiss appellees' bill for want of equity.