KOUNS v. SOUTHWOOD OIL COMPANY.

4-6531                                          158 S. W. 2d 37

Opinion delivered January 12, 1942.

*Byron A. Irwin* and *Knox, Keith & O'Connor*, for appellant.

*Cockrill, Armistead & Rector,* for appellee.

HOLT, J.   June 20, 1929, appellant, Bert Kouns, brought two separate actions in the Columbia chancery court to cancel certain oil, gas and mineral leases as clouds upon his title and for an accounting.   These suits were consolidated for the purpose of trial.   One suit was against the Southwood Oil Company, the lease covering 80 acres of land, under which appellant alleged that he was the owner of one-eighth of the minerals.   The other suit was against the Atlantic Refining Company, the lease also covering 80 acres of land, under which appellant alleged that he was the owner of one-eighth of the minerals.   Appellant alleged in each suit that the appellee oil company affected had forfeited its lease by failing to drill a well or to pay rent within the time specified in the lease.

Appellees entered a general denial and, among their defenses, alleged that appellant had waived his right to claim a forfeiture of the two leases and was estopped from claiming such forfeitures.

470

The trial court found the issues in favor of appellees and entered decrees accordingly. These appeals followed.

The material facts are that J. A. Foster (the landowner) on August 19, 1935, executed an oil and gas lease to Harry L. Elam, trustee, covering the 80 acres involved in the suit against appellee, the Southwood Oil Company, this company having acquired the lease to this 80-acre tract by *mesne* assignments.

March 25, 1937, J. A. Foster (the landowner) executed another oil and gas lease covering the 80 acres in the suit against appellee, Atlantic Refining Company, said company having acquired the lease to this 80-acre tract by *mesne* assignments.

Each of the leases involved is the ordinary "unless" lease and contains the following provisions: "It is agreed that this lease shall remain in force for a term of ten years from this date (hereinafter called 'primary term') and as long thereafter as oil, gas or either of them is produced from said land by lessee or the obligations in lieu of production are fulfilled."

Each lease also contains the usual "unless" drilling clause, that in the Atlantic being: "If drilling operations are not commenced on said land on or before the 10th day of August, 1936, this lease shall then terminate as to both parties, unless lessee shall pay or tender to the lessor or to the credit of lessor in Farmers Bank & Trust Company at Magnolia, Arkansas, (which bank is lessor's agent) the sum of one hundred eighty dollars ($180), (hereinafter called 'rental'), which shall extend for twelve months the time within which drilling operations may be commenced. Thereafter, annually in like manner, and upon like payments or tenders, the commencement of drilling operations may be further deferred for periods of twelve months during the primary term. The payments or tenders of rental may be made by the check or draft of lessee mailed or delivered to said bank, on or before such date of payment." The corresponding clause in the Southwood lease is identical except for dates and amounts.

The rental amounted to $1 per acre and each lease contains a clause allowing either party to assign.

Following the execution of these leases, Foster (the landowner) on April 9, 1937, conveyed to appellant, Kouns, for a consideration of $900, subject to said leases, an undivided one-fourth interest in and to the oil, gas and other minerals in, under and upon the lands described in the two leases, including the two 80-acre tracts in question.

April 12, 1937, appellant, Kouns, for a consideration of $450 conveyed to F. A. Fuller an undivided one-eighth interest in the minerals described in his deed from Foster, including the lands in the instant suits, on which the Atlantic and Southwood have drilled four wells. This deed was duly recorded in Columbia county, Arkansas.

We here quote additional facts from the chancellor's findings:

"Later the Shell Petroleum Company, which owned a portion of the lease, raised objection to the acknowledgment and, as a result, on May 28, 1937, this deed was reacknowledged after it had already been recorded, and after being reacknowledged was refiled and re-recorded in the recorder's office of Columbia county, Arkansas.

"The recorder in copying the deed from Kouns to Fuller upon the records for the second time, in accordance with the custom in that county, did not copy as a part of the record the certificate of the prior recordation of the deed. He did nothing that would show that the instrument appearing at two different places upon the record was one and the same instrument. Neither did the grantor make any indication on the deed that the same was a correction of the prior recordation, or any indication that it was in fact the same deed being re-recorded. Therefore the record reflected two deeds to Fuller from the plaintiff, each conveying one-eighth of all the oil, gas and other minerals, or a total of one-fourth, the amount previously purchased by the plaintiff from the landowner.

"Sometime before the rentals were due by the Atlantic on its eighty on March 25, 1938, it procured an abstract of title covering the land and delivered it to McKay & McKay, competent and reputable attorneys.

with a request that it be advised as to whose credit it should deposit the rentals.

"The attorneys found in the abstract what appeared to be two deeds from Kouns to Fuller, each conveying an undivided one-eighth interest in the minerals under the land covered by the Atlantic's lease, and being in the aggregate a conveyance to Fuller by Kouns of all the minerals which he had acquired from the landowner, Foster. There being nothing in the records to indicate that there was but one deed from Kouns to Fuller, and that it had been twice recorded, said attorneys advised the Atlantic to pay Fuller one-fourth of the delay rentals, $20, or deposit that amount to his credit in the depository bank. In apt time the Atlantic deposited with the depository bank the full $80 required to be paid as delay rentals, and directed the bank to place $20 to the credit of Fuller. The balance, or $60, was placed to the credit of the landowner, Foster.

"About the first of August, 1938, the Southwood followed the same procedure with respect to its eighty, and, upon the opinion of the same attorneys, paid delay rentals in the same manner in apt time as set forth above with respect to the Atlantic."

It thus appears, under the undisputed facts, that the leases in question provided that the delay rentals might be deposited with the Farmers Bank & Trust Company of Magnolia, Arkansas, and that this bank should be the agent of the lessor and his assignees. Each of the appellee oil companies in apt time paid to this bank $80 on each eighty, the full amount required to be paid under the terms of the leases. The facts further disclose that appellees, in order to determine to whom they should direct the bank to pay these delay rentals, before making these deposits with the bank, procured the services of able and skilled attorneys to examine their abstracts of title and advise them to whom to direct the rental payments. Upon examining these abstracts, these attorneys found that appellant, Kouns, had made two conveyances to Fuller, each conveying to him an undivided one-eighth interest of the minerals, or a total one-fourth interest of the minerals under each eighty. There was nothing in

either of these conveyances to indicate to these attorneys, or to appellees, that each of said conveyances was not a separate and distinct conveyance of one-eighth of the minerals, and we think they were justified in concluding that Fuller was the owner of one-fourth of the minerals; that appellant, Kouns, had conveyed all of the interest he had; and that appellee oil companies were justified in directing the bank to pay the rentals to Fuller. It must be borne in mind that it was the act of appellant, Kouns, that caused the re-recording of the deed without indicating in the deed the purpose, or reason, for which it was being re-recorded. It contained nothing to indicate that it was to take the place of and be in lieu of the former recorded deed and naturally this caused it to appear, when it was recorded, as an additional deed to Fuller of another one-eighth of the minerals which would represent Fuller's entire interest.

The confusion, if any, was caused solely by the act of appellant, Kouns. In equity and good conscience he should not be and will not be permitted to profit by this act. Appellees, in our opinion, have done everything reasonably to be required of them, and have exercised due diligence, in an effort to pay these delay rentals to the proper parties. At all times appellees have stood ready and willing to pay these delay rentals to the proper parties.

It is our view that a failure to pay the rentals within apt time in accordance with the terms of the leases would operate to forfeit the leases, however, the lessor might, if he so elects, waive the forfeitures. Such was the effect of the opinion of this court in *Cordell* v. *Enis,* 162 Ark. 41, 257 S. W. 375, in considering provisions in an oil and gas lease similar, in effect, to those in the instant cases. The principles announced in that case apply with equal force here. There this court in construing the lease said: "In the case of *Epperson* v. *Helbron,* 145 Ark. 566, 225 S. W. 345, 15 A. L. R. 597, this court had under consideration a lease similar to the one in the case at bar. . . . In construing the Epperson lease this court recognized that the drilling of a well in the specified time

was a part of the consideration, which could not be avoided except by paying the delay rentals yearly in advance, which were stipulated for in the lease. In construing the lease the court took occasion to say: 'Leases of this kind are prepared by the lessee, and holding to the lease after ceasing to search for oil or gas is often for the purpose of speculation. When the lessee is not exploring the land for oil or gas, he is out nothing, and it is valuable for him to hold the lease for the purpose of speculation, or to await developments of other persons in that vicinity. Hence, we think that time is of the essence of the contract. It is contemplated that the lessee should do the affirmative act of paying the annual rental in advance in order to prevent the lease from being declared forfeited by the lessor.' For this and other reasons assigned by the court in the Epperson case, courts of equity will follow the law and enforce forfeitures against defaulting lessees in oil and gas leases, where inequitable results follow if they refused to do so. This rule, however, does not impair the general rule that courts of equity will refuse to enforce forfeitures where there has been a waiver thereof. Equity abhors forfeitures and will seize upon slight circumstances indicating a waiver, to avoid or prevent them.''

Having reached the conclusion that appellant, under the facts in the cases before us, is estopped to declare a forfeiture of the leases in question, and no error appearing, the decree is affirmed.

The chief justice concurring.