GRIFFIN *v.* J. E. SPEER LUMBER COMPANY.

4-9497                                        239 S. W. 2d 587

Opinion delivered May 21, 1951.

*J. W. Patton, Jr.,* for appellant.

*McKay, McKay & Anderson* and *Pat Robinson,* for appellee.

GRIFFIN SMITH, Chief Justice. Deeds conveying standing timber of designated sizes and varieties gave the grantee lumber company a primary period of three years for removal, with the privilege to extend for two additional years upon payment of $300 per year in the one case, and $45 annually in the other. The critical question is whether belated tenders were sufficient. The Chancellor held that they were.

On February 27th and March 15th, 1946, the J. E. Speer Lumber Company paid Oce S. and Era L. Griffin, husband and wife, $3,500 for the timber on 320 acres, 240 of which are involved in this suit. In May and June, 1946, the Griffins conveyed in fee 120 acres upon which some of the timber stood, but the deeds were subject to the lumber company's rights. Oce Griffin died testate in September, 1946, having devised to his wife, an appellant here, and to others who intervened in this suit, all of the lands encumbered by the timber deeds, with the exception of the tracts sold in May and June.

The lumber company alleged in its complaint of August 9, 1949, that those named as defendants were interfering with its right to cut the timber, and procured a temporary restraining order. Answers, cross-complaints, and interventions denied that the plaintiff owned the timber and allege that the primary period of three years had expired and the right to extend had not been exercised.

At trial the company introduced testimony, with photostatic copies of its records, showing that on February 17, 1949,—ten days before the initial three-year period mentioned in the first deed, and more than a month before the primary period in the second deed, matured—it mailed to Mrs. Griffin from the Stamps office a check for $345. The remittance was enclosed in an envelope properly stamped, bearing the sender's return, and addressed to Lewisville, where Mrs. Griffin resided. When the company through an agent in charge of records undertook to introduce a copy of its letter of transmittal, counsel for appellees interposed with the statement: ''We want to voice the same [objection set out in our written demurrer] —the mailing of the check is immaterial and would not constitute payment.''

The effect of this plea was an admission that the check had been sent as the plaintiff contended, hence the only question is whether this act of good faith, when viewed in connection with attending circumstances, relieved the company of what the appellants think was an obligation absolute to make actual payment within a reasonable time. Through third party sources the company heard that Mrs.

Griffin had denied receiving the check, so another was written. This time the amount, $690, covered the full two-year period and the letter was registered August 9th to insure delivery. It was returned by Mrs. Griffin, who testified that when the company defaulted—or, rather, when it failed to exercise the right to extend—she offered the timber for sale. This suit followed.

The company's accountant-witness admitted that in examining bank statements each month she observed that the check sent February 17th had not cleared, but this did not indicate failure of delivery. It was not unusual for payees similarly situated to hold such checks until monetary needs required use of the proceeds. On previous occasions Mrs. Griffin had withheld timber checks that were later cashed, hence (inferentially) the delay of approximately five months did not suggest to the witness that the remittance had not been received.

Mrs. Griffin admitted that she did not inform anyone connected with the lumber company that the check, if sent, had gone estray; nor did she attempt to do so. She was in Lewisville February 17th and 18th, and [periodically] until March 9th, but had spent fourteen days in a hospital.

We think the Chancellor was justified in refusing to declare a forfeiture. The first deed gave the grantee three years to cut and remove, "and two additional years by paying $300 each year, [and the company shall] have and enjoy the full time herein granted." The second deed allowed three years, "and two additional years by paying $45 each year, and [the grantee] shall be entitled to all of that time within which to cut and remove the timber."

Appellee's construction of the pertinent phrases is that in each instrument five years were contemplated—three in any event, and an additional two by payment of the stipulated sum. One deed mentions "three years and two additional years," the other says the grantee shall be entitled to "all of that time," etc.

Whatever the inter-party intentions may have been, there are no words expressing defeasance. Neither is time

declared to be of the essence, nor is it necessarily inferred. Value of the contingent right was fixed by the predetermination that $300 in one case and $45 in the other, if paid annually, would compensate all damage or inconvenience to which the grantors might be subjected, and there is nothing to show that appellants would sustain any loss other than those incidental to a denial of the privilege of reselling the timber, or retaining it. No innocent reëntry, attended by good faith expenditures made in reliance upon abandonment, is shown. The matter resolves itself into the single proposition appellants seek to maintain: that appellee's delay in ascertaining whether the check had been received, and its consequent failure to *deliver* the rentals, was sufficient as a matter of law to justify the forfeiture.

In *Watson* v. *Stout Lumber Co.,* 175 Ark. 240, 298 S. W. 1010, the court held that contractual deed recitals (recitals in many respects similar to those considered here) amounted—in respect of the extension provision—to more than a mere option to purchase. The additional time depended upon *prepayment,* to be evidenced by the lumber company's act in depositing a stipulated sum in the Bank of Hampton to Watson's credit. When the grantor, who resided on a rural route, did not receive direct payment, he went to the bank and found that the deposit had not been made. When the required amount was received by check on the 18th, Watson consulted an attorney and was advised that the company's rights had terminated.

One distinction between the cited decision and the position of appellants in the case at bar is that Watson as grantor sued to cancel the deed, and he was therefore asking equity to enforce a penalty in his favor. Here the action was instituted by the lumber company to prevent a forfeiture.

Unyielding rules are not announced by the cases that have been collected. Rather, they appear to hinge upon essential facts creating comparative or relative equities. When failure has been intentional the difficulty is not great. Here the proof shows that a substantial portion of

the timber appellee bought on terms mutually satisfactory had not been removed. We are in accord with appellants' contention that a payment-delay of five months would, *prima facie,* be unreasonable; but where (as the court found) a check was actually mailed in a timely manner, and when the company acted promptly by tendering another remittance before a changed status had adversely affected appellants, it would be inequitable to reverse the decree.

Affirmed.