VAUGHAN *v.* DOSS.

4-9667                                   245 S. W. 2d 826

Opinion delivered February 4, 1952.

Rehearing denied March 3, 1952.

*McKay, McKay & Anderson,* for appellant.

*Jack Machen,* for appellee.

ED. F. McFADDIN, Justice.  On petition of the Land-owner-Lessors, the Chancery Court cancelled an oil and gas lease for failure of the Lessees to pay the delay rentals at the time and place designated in the lease; and to reverse the Chancery decree, the Lessees bring this appeal.  For convenience, we shall refer to the parties as "Lessors" and "Lessees."

The facts were stipulated.  Lessors, being the owners of 200 acres, executed an oil and gas lease to Lessees on March 8, 1947.  The lease provided, *inter alia*:

"If no well be commenced on said land on or before the 8th day of March, 1948, this lease shall terminate as

to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the First National Bank of Magnolia, Magnolia, Arkansas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of Two Hundred and no/100 ($200.00) Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods in the same number of months successively.''

No well was commenced on the lands, and the Lessees regularly paid delay rentals on or before March 8th in each of the years 1948, 1949 and 1950. But the delay rental payment due March 8, 1951, was not made at the designated bank (First National Bank of Magnolia) until March 27, 1951. The events leading up to the payment, even on that late date, were as follows:

a) On February 26, 1951, Lessees enclosed in a letter a check payable to the First National Bank of Magnolia (hereinafter called ''Magnolia Bank'') for *$200.50*, with instructions to use $200 to pay this delay rental that would be due March 8, 1951. *But, by Lessee's mistake,* the letter containing such check was addressed to First National Bank at *El Dorado, Arkansas* (hereinafter called ''El Dorado Bank'').

b) The El Dorado Bank, upon receiving the letter, failed to notice that the check was made payable to the Magnolia Bank. The El Dorado Bank endorsed the check and made deposit to the Lessors' credit in the El Dorado Bank, and so notified the Lessees on March 1, 1951, *who again failed to detect any mistake.*

c) On March 15, 1951, (seven days after the delay rental was due) Lessors were informed by the Magnolia Bank that no delay rental had been deposited to the Lessors' credit; and, thereupon, Lessors demanded of Lessees that the lease be cancelled of record.

d) The Lessees even then insisted that the delay rental had been paid on time, and it was not until March 27, 1951, that they, after having ascertained the mistake, sent the $200 delay rental to the Magnolia Bank. The Lessors refused to accept the rental at such a late date, and filed this suit for cancellation, on April 2, 1951.

As aforesaid, the Chancery Court cancelled the lease, and the Lessees have appealed. At the outset, it is well that we review some of our cases, each involving an "unless" lease similar in essential respects to the one in this case, because our prior cases have become a rule of property.

In *Epperson* v. *Helbron,* 145 Ark. 566, 225 S. W. 345, 15 A. L. R. 597, the basic question was the time when the delay rental was required to be paid, and we said:

"Under a lease of this kind the lessee, so long as he pays the rentals in the manner provided, has an option to continue the lease in force to the end of the term. The lessee may also terminate the lease at will by a mere failure to pay the stipulated rent at the time due. The lessor has no right to terminate the lease as long as the lessee complies with its terms, but he may declare a forfeiture if the lessee fails to pay the annual rental when due. . . .

"Hence we think that time is of the essence of the contract. It was contemplated that the lessee should do the affirmative act of paying the annual rental in advance in order to prevent the lease from being declared forfeited by the lessor."

In *Harrell* v. *Saline Oil & Gas Co.,* 153 Ark. 104, 239 S. W. 731, the delay rental was due January 19th: it was not tendered until January 29th. In holding the lease cancelled for nonpayment of rental on the due date, we said:

"We have decided that the time specified for performance in a contract similar to the one now under consideration is of the essence of the contract. *Epperson* v. *Helbron,* 145 Ark. 566, 225 S. W. 345, 15 A. L. R. 597. * * *

"According to the great weight of authority, notice of forfeiture is not necessary under a contract similar or identical with the one now under consideration, in order to terminate the contract. The authorities on the subject are to the effect that where the parties state that the contract shall be terminated unless certain acts are performed within a certain time, the contract comes to an end without further action unless notice is provided in the contract itself."

The *Epperson-Helbron* case was decided by this Court on November 1, 1920, and the *Harrell-Saline* case was decided on April 10, 1922. The Arkansas Legislature of 1921 enacted Act 192, designed to aid a landowner in having cancelled of record a lease that had expired. Then the 1923 Legislature, by Act 170, amended the 1921 Act and definitely recognized that when the land was not developed and the delay rental not paid, the landowner had a right to have the lease cancelled of record. Section 3 of Act 170 of 1923 is now § 53-314 Ark. Stats., and uses language, which reflects the rule of property established by the *Epperson-Helbron* and *Harrell-Saline* cases, to-wit:

"If any installment of rental due under any such lease is not paid when due according to the terms of the original lease, thus causing a forfeiture and termination of the lease, the then owner of the fee," etc. etc. etc.

So from these cases and Legislative enactment, we point out that the holding, that the lease terminated upon failure of the lessee to make prompt payment of delay rental, has become a rule of property in this state; and our adjudicated cases, along with a majority of those from the other oil producing states, provide the foundation for the textual statement found in Summers on Oil & Gas, Permanent Edition, Sec. 452:

"But where the 'unless' drilling clause is used a failure of the lessee to drill or pay a stipulated sum of money *ipso facto* terminates the lease without the necessity of re-entry, action, or their equivalents by the lessor. . . . The lease of the 'unless' type provides that the

lessee's privilege shall terminate unless he drills or pays at a certain time. Or, putting it another way, the lease continues as long as he pays the stipulated sums of money, limited, of course, by the length of the definite term. . . ."

Appellants argue that "equity abhors a forfeiture" and that the equity court should relieve the Lessees against the forfeiture in this case. But the record shows (a) that the Lessees made the mistakes, (b) the Lessors made no mistakes, and (c) the Lessors did nothing to mislead the Lessees. It is true that (a) we have refused cancellation in a case in which a lessor received and retained the delay rental tendered after due date (see *Cordell* v. *Enis,* 162 Ark. 41, 257 S. W. 375), and (b) we have refused cancellation in a case wherein the lessee was anxious to pay, but the mineral ownership was in dispute and the confusion arose through fault of the lessor. See *Kouns* v. *Southwood Oil Company,* 203 Ark. 469, 158 S. W. 2d 37.[1] But these cases only emphasize the rule that where the lessee is at fault and the lessor does nothing to mislead him, and refuses to accept the delay rental, then cancellation must follow. In 5 A. L. R. 2d 993, there is an annotation entitled:

"Mistake, accident, inadvertence, etc., as ground for relief from termination or forfeiture of oil or gas lease for failure to complete well, commence drilling, or pay rental, strictly on time."

A careful study of that annotation confirms us in our holding in the case at bar.

In our early case of *Epperson* v. *Helbron, (supra),* we discussed this matter of forfeiture in this language:

"It is true that, in general, equity abhors a forfeiture, but not when it works equity and protects a landowner from the laches of a lessee under a lease for exploring for oil and gas. The reason is that a small tract of land could be nearly or entirely drained by wells on adjoining lands, and it is common that leases contain cove-

---

[1] Even in the *Kouns-Southwood* case, we were careful to recognize the general rule in this language: "It is our view that a failure to pay the rentals within apt time in accordance with the terms of the leases, would operate to forfeit the leases . . . ."

nants for diligent operation and for forfeiture in case of suspension.''

Oil and gas are such fugitive substances, that the rule has grown up that equity demands of the lessee strict compliance, and favors ''forfeiture'' in order to accomplish justice for the lessor. Summers on Oil & Gas, in § 437, states the holding:

''It will likewise be found that it is in cases where leases have terminated automatically under the express limitations of the 'unless' drilling clause or the *habendum* clause, or where cancellation of the lease is sought on grounds of inadequacy of legal remedy or abandonment of the lease by the lessee, the courts are most emphatic in their statements that equity favors the forfeiture of oil and gas leases.''

The case at bar is vastly different from that of *Griffin* v. *J. E. Spear Lumber Co.,* 219 Ark. 1, 239 S. W. 2d 587. That was a timber case, and the trial court found that the extension money was actually mailed at the correct time. Here, the fault was that of the Lessees in sending the check to the wrong bank, and there was no fault, or waiver, by the Lessors. Equity should not, under the guise of ''abhorring a forfeiture,'' essay to step in and create a new contract for the parties. If the lease requirement to deposit money in the First National Bank of Magnolia could be satisfied by depositing the money in the First National Bank of El Dorado, then the requirement, of deposit, could, by the same token, be fulfilled by depositing the money in Dallas, Chicago, or New York. The result would be that after the delay rental became due, the lessor would have to notify the lessee and then wait to see if the latter claimed a deposit to have been made anywhere. In the meantime, oil development might abate and the landowner might suffer complete loss while the lessee gambled on Court action, on the theory that ''equity abhors a forfeiture.'' We conclude that equity is best served by requiring oil and gas lessees to live up to their contracts.

The Chancery Court clearly followed our cases and statutes which have become a rule of property. Affirmed.

GRIFFIN SMITH, C. J., dissents.