HENRY *v.* GULF REFINING COMPANY OF LOUISIANA.

Opinion delivered March 11, 1929.

*F. P. Sizer, Coulter & Coulter, Gordon Huffmaster, Tom W. Campbell* and *James D. Head,* for appellant.

*Gaughan, Sifford, Godwin & Gaughan, Mahony, Yocum & Saye* and *Patterson & Rector,* for appellee.

HART, C. J., (after stating the facts). In the first place, counsel for appellees claim that the interest created by the leases which were assigned by Conyers and Hunt to Henry did not create such an interest in lands as would support ejectment against the lessees by their assignee. This question was discussed and decided on the first appeal. The court said that an action of ejectment might be maintained in this State in all cases where there is a legal right of possession against one who wrongfully holds possession from the person having the legal right.

It is not necessary to discuss this phase of the case any further than to say that, whatever was decided on, the first appeal remains the law of the case for all further proceedings. This general rule is grounded on public policy, expedience, and reason. The rule has been so long established and so uniformly adhered to that it is not a mere matter of practice or procedure. *Taliaferro* v. *Barnett,* 47 Ark. 359, 1 S. W. 702; *Vogel* v. *Little Rock,* 55 Ark. 609, 19 S. W. 13; and *Miller Lumber Company* v. *Floyd,* 169 Ark. 473, 275 S. W. 741. Hence we may consider it is settled in our former opinion that appellant had the right to maintain the action.

After the case was remanded, appellant filed what he terms an amended and substituted complaint in the circuit court. The amendment is too long to be set out in this opinion, and we only deem it necessary to state that it in no matter changes the issue between the parties in so far as it relates to the construction of the leases in question; and, under the well established rule in this State that the law as settled upon the first appeal becomes and must be observed as the law of the case in its subsequent progress throughout, the circuit court and, as well, this court upon a second appeal must regard as conclusive the issues decided in the former appeal. In short, the decision upon the former appeal, in so far as it construed the leases in question, is *res judicata*. *Fort Smith Lumber Company* v. *State ex rel. Attorney General,* 138 Ark. 581, 211 S. W. 662; *Baum* v. *Ingraham,* 147 Ark. 309, 227 S. W. 407; and *Atkinson Improvement Company* v. *Nakdimen,* 157 Ark. 403, 248 S. W. 561.

Counsel for the respective parties to this lawsuit have entered upon learned and elaborate discussions of the legal rights conferred upon the parties by the original leases, and the right which inured to the appellant by virtue of the second leases obtained by appellant's grantor from the owners of the land. We need not consider this phase of the case, because it is *res judicata,* having been expressly decided by the court upon the former appeal. It was there held that it is only where a grantor attempts to convey a greater estate in lands than he has a right and title to at the time of conveyance that an after-acquired title passes to the grantee, under Crawford & Moses' Digest, § 1498, and then no greater estate than was attempted to be passed in the first conveyance. On this question the court said:

"The execution of these second leases by the owners of the lands to appellant's assignor, even conceding it was sufficiently alleged that the right and estate conveyed thereby inured immediately to the benefit of the plaintiff under the terms of the statute, could have had no effect to convey any further or other right to plaintiff than

had already been conveyed under the terms of the first leases in any event, and it was not alleged that the lessors did not have a right to convey the leasehold estates in the first instance, as was done. It is only in cases where the grantor attempts to convey a greater estate in the lands than he has the right and title to at the time of the conveyance that any after-acquired title passes to the grantee under the terms of the statute, and then no greater estate would pass than that attempted to be conveyed in the first instance.''

Thus it will be seen it was expressly held that the appellant in no event could acquire any greater title or interest in the lands than had been conveyed to him under the terms of the first leases. Hence it does not make any difference whatever whether the leases were freehold estates or estates for years. The oil and gas leases were to run for five years and as much longer as oil and gas were found in paying quantities. The oil and gas were to be extracted and taken by the lessees or their assignee, and for this royalties in money were to be paid.

By the terms of the leases, which, as we have just seen, fixed the rights of appellant, he was bound to complete a well within one year from the date of the lease, or it became null and void. When the year expired and he had not dug a well and found oil or gas within the depth prescribed by the terms of the leases, the leases themselves terminated, unless he complied with the other conditions in the leases. A lease may terminate or end by the expiration of the term for which it was created, as well as by breach or a forfeiture under the terms of the lease. Hence, when the year from the date of the expiration of the lease which was assigned to appellant expired without his having drilled a well, as required by its terms, or attempting to comply with the other conditions in it, his rights under it terminated by the provisions of the lease itself. This is so because the lease provided in express terms that, if a well to the required depth had not been drilled within the year, or if oil or gas had not

been found at a lesser depth, then the lease should become null and void. The record shows that appellant did not drill a well to the required depth and did not bring in a producing well at a lesser depth within one year from the date of the execution of the lease. He did not attempt to drill another well after the one-year period, and did not institute this action until more than five years after the expiration of the one-year period. It will be remembered that the lease was for a definite term of five years from the date of its execution and as long thereafter as oil or gas or either of them was produced from said land by the lessees. Hence appellant's right to the possession of the land for the purpose of exploring it for gas and oil had ended by the terms of the lease itself, and the court rightfully held that he was not entitled to maintain an action of ejectment to recover the possession of the land for the purpose of further exploring it for gas and oil.

This brings us to a consideration of that branch of the case where appellant claims damages on account of having been prevented from drilling the well by the fraudulent acts of his assignors. It will be remembered that the leases were to remain in force five years and as much longer as oil or gas was being produced from the land by the lessees. The leases also contained a clause that the lessees should drill a test well under the conditions prescribed in the leases, and that, if said well was not drilled within one year from the date of the execution of the leases, the leases would be of no effect.

According to the version of the transaction by appellant, he took an assignment of the leases from Conyers and Hunt without ever having seen the leased premises. He had three drilling rigs, and Conyers and Hunt represented to him that one of them would be the kind to drill the test well with. He set up this rig upon the leased premises, and found that it was not the kind necessary, on account of the formation of the earth in that territory. He then attempted to purchase a rotary rig, which was the kind necessary for drilling operations

in that territory. He had secured from friends a prom-ise to finance him in buying a rotary rig, in the first part of April, about a month before the leases of the land on which he was drilling should expire. He could have fin-ished drilling the test well under the terms of the leases within a month, and this would have been a compliance with the terms of his contract. About this time Conyers secured leases from the owners of the land on about 3,000 acres of the block which had been assigned to him. He reported this fact to his backers, and they refused to assist him in procuring the rotary rig, and he was com-pelled to abandon operations on the leased premises. He did not finish drilling the first test well, and did not there-after attempt to drill another one. This suit was not commenced for more than six years after he had aban-doned drilling operations on the leased premises.

If he did not comply with the terms of the leases in drilling the test wells, his rights to continue operations under the leases expired. The leases contained an ex-press provision that, if a test well was not drilled within one year from the date of the execution of the leases, the leases should become null and void and of no effect. By the terms of the leases and of the assignment to him, ap-pellant became bound for the cost of the drilling opera-tion, and, if the undertaking was unsuccessful, he alone was to sustain the loss. If it was successful, he was to share in the result with his lessor. The parties were competent to contract with each other, and entered into the contract for the assignment of the leases because the contract was satisfactory to both parties. There was nothing in the contract as to the kind of drilling rig to be used. The statement of Conyers and Hunt to Henry that one of his rigs was adapted to the purpose was merely an expression of opinion, and was not a mat-ter of inducement to Henry to enter into the contract with Conyers and Hunt for an assignment of the leases. When appellant failed to comply with the terms of the leases in drilling the test well, his rights were forfeited to Hunt and Conyers, after the expiration of the one-

year period. *Lawrence* v. *Mahoney,* 145 Ark. 310, 225 S. W. 340; *Epperson* v. *Helbron,* 145 Ark. 566, 225 S. W. 345, 15 A. L. R. 597; *Hughes* v. *Cordell,* 174 Ark. 757, 296 S. W. 735; and *Drummond* v. *Alphin,* 176 Ark. 1052, 4 S. W. (2d) 942.

The new leases taken by Conyers from the owners of the lands did not purport to commence until after the expiration of the leases which had been assigned to Henry. If they had done so, in the very nature of things they could not have been effective until the leases which had been assigned to Henry had expired either by their own terms or by his failure to comply with the terms thereof. It did not make any difference what motive prompted Conyers to take the new leases. He might have thought that Henry would fail to comply with the terms of the original leases in drilling the test well, or he might have been actuated by a motive to regain possession of the leased premises because the prospects of bringing in oil had become better. The rights of Henry in the leased premises were vested in him by the terms of the leases which had been assigned to him, and could not be taken away by any subsequent leases, whether executed by the owners to Conyers or to other persons. There is nothing in the terms of the original leases which were assigned to Henry that prevented the owners from giving new leases to Conyers, or to any one else, to take effect upon the expiration of the term of the original leases. If Conyers had a right to take the new leases, the effect that this might have upon Henry in securing financial assistance to finish drilling his first test well was not an element of damages against Conyers and Hunt. There was nothing in the original leases which gave the lessees or their assignee a preference right to secure renewals or extensions of the leases. Hence any one had a right to secure new leases to go into effect after the expiration of the original leases, either by operation of law or by the failure of the lessees to perform the covenants and conditions prescribed therein. This being so, the pro-

curers of the new leases would not be liable in damages to appellant, and, if appellant's backers refused him financial assistance because of this fact, it was a loss without a remedy.

It may be, as stated by him, that he could have finished drilling the test well if he had secured financial assistance within the last month of the first-year period, but his failure to do so was his own loss, and did not give him a right to recover damages against Conyers and Hunt. As we have already seen, by the terms of the leases he was to bear the expenses of drilling the test well, and he alone was to suffer the loss occasioned by his failure to do so. Therefore we are of the opinion that the court properly directed a verdict in favor of appellees.

Other interesting propositions of law have been ably discussed by counsel on both sides, but the views we have adopted and the conclusions we have reached render it unnecessary to determine them, and we pretermit any discussion of them in this opinion.

It follows that the judgment must be affirmed.

HART, C. J., (on rehearing). It has been suggested that the petition for rehearing in this case should be granted because the necessary effect of the opinion upon the first appeal, under the style of *Henry* v. *Gulf Refining Co. of Louisiana,* 176 Ark. 133, 2 S. W. (2d) 687, was to hold that Henry was entitled to recover some amount of damages. We do not think so.

In that case the circuit court sustained a demurrer to the complaint. The prayer of the complaint was that Henry have judgment for the title and restitution of the possession of the leasehold estates described in the complaint; that he have damages for the wrongful withholding of said property by the defendant; and that he recover damages against the defendant for the oil and gas wrongfully converted by them. In the opinion of this court it was held that the execution of the second leases by the owners of the land to Henry's assignor, Conyers,

could have no effect to convey any further right to Henry than had already been conveyed to him by the terms of the first leases. There was no judgment for the restitution of the possession of the leasehold estates to Henry, because his leases had expired by their own terms. Hence he was not entitled to recover possession of the leasehold estate. He was not entitled to damages for the wrongful withholding of the premises, because his possession of the leasehold premises was not interfered with until his leases expired. There was no eviction, either actual or constructive. His actual possession of the leasehold estate was not interfered with. There was no constructive eviction by the assertion of a paramount title in a third person which could have had the effect to oust Henry. Both leases were executed by the same person as owner. After having made a lease to Conyers and Hunt, which was duly assigned to Henry, all that it was possible for the owner to grant by a subsequent lease was such right in the leased premises as was not conveyed by the prior lease. The owner of the land, after the execution of the first lease, could not grant anything in a subsequent lease which he had previously granted in the first lease. Hence Henry, not having been ousted from the possession of the leased premises, was not entitled to damages on that account.

Again, he asked judgment for damages against the defendants for oil and gas wrongfully converted by them. As we have already seen, the lessees under the second leases did not enter the premises and drill oil wells until after the leases which had been assigned to Henry had expired by their own terms.

This covers all the issues raised upon the first appeal. Upon the remand of the case, Henry filed what he terms a second amended and substituted complaint. In it it is alleged that Conyers and Hunt conspired together to hinder and prevent him from completing a well which he had started to drill on the leased premises. He asked for damages on that account. His prayer in that

complaint is the same as the prayer contained in his complaint on the former appeal. We have treated the prayer of the complaint as amended so as to conform to the statements made by counsel in opening the case, which was by agreement treated as the evidence introduced at the trial.

Complaint is made of our opinion in the present appeal because the court said that the new leases taken by Conyers from the owners of the land did not purport to commence until after the expiration of the leases which had been assigned to Henry. The use of the word "purport" might have been left out of the opinion, and, in any event, could only be said to be a misapplication of terms. What the court meant to say, by the use of this word, is that it expressed the substance as it appears on the face of the lease to every person who might read it, and means the appearance and not the legal import of the leases. In other words, we meant to say that there was no express language in the leases showing that they were intended to impair the legal obligation of the first leases which had been executed by the owners of the land to Conyers and Hunt and transferred by them to Henry. The new leases were executed about a month before the expiration of the fixed period in the old leases. They do contain the following: "It is agreed that this lease shall remain in force and effect for a term of five years from this date, and as long thereafter as oil and gas, or either of them, is produced from said land by the lessees." We do not think that the legal import of these words was an intent to impair the terms in the leases which had been transferred to Henry. Indeed, such an attempt would have been futile. At the time of the execution of the new leases, Henry was in possession of the leased premises described in the complaint, and such possession was notice to all the world, not only of the possession itself, but also of the right, title and interest, whatever they may be, of the party in possession.

In addition to this, Conyers and Hunt had actual notice that Henry was in possession of the leased premises. There was no assertion of a paramount title of third parties as a result of which Henry was ousted from possession.

The principles announced in *Millar* v. *Mauney,* 150 Ark. 161, 234 S. W. 498, relied upon by counsel for appellant, have no application in the present case. In that case there was a suit by appellees as owners to recover possession of certain leased lands. Appellants demurred to the complaint, and made a motion to transfer to the chancery court. They also filed an answer in which they set up that appellees had thrown certain obstacles in their way which prevented them from performing the covenants of their leases. The court held that, if appellees, by their conduct in instituting lawsuits, or in any other manner, put obstacles in the way of appellant which caused them to fail to perform their covenants, then appellees would be estopped from setting up an abandonment or forfeiture by the appellants. Appellees based their right to recover possession of their lands on the ground that appellants, as lessees, had abandoned or forfeited their right of possession of the leased premises. Appellants claimed appellees were estopped by conduct from asserting that they had forfeited or abandoned their rights in the leased premises. Here the owners of the new leases made no claim of abandonment or forfeiture on the part of Henry. They did not enter the land under the new leases until after the term of the first leases had ended. Henry only claims that he did not finish drilling during the first year because he could not borrow money after the execution of the new leases.

In the present case there was nothing done by appellees to prevent appellant from drilling for oil under the terms of the leases which were assigned to him. There was no assertion of any paramount title by third parties. The same landowner had executed both leases. In order to extend the leases which had been assigned to

Henry beyond the definite term, provided in the leases, Henry was required to show that he was engaged in the production of oil on the leased premises, and this he failed to do. Hence, at the end of his definite term, the leases expired by their own terms. We do not think that he has shown a legal cause for damages simply by establishing that the owners of the land executed new leases to Conyers about a month before the expiration of the definite terms in the leases which had been assigned to Henry. The execution of these new leases did not prevent him from drilling or exploring for oil. He does not claim such to be the case. He only claims that, when persons who had promised to lend him money to continue his work heard of the execution of these new leases, they refused to furnish him the money with which to carry on his drilling operations.

We adhere to our original opinion, that the execution of the new leases to Conyers did not enlarge the right of Henry to a freehold estate under the first leases; and a majority of the court is of the opinion that the failure of Henry's backers to furnish him drilling expenses on account of the execution of the new leases does not constitute a legal cause of action against the appellees for damages. The leases which were transferred to Henry have ended by their own terms, and he is not entitled to recover damages from the appellees for the alleged wrongful taking of oil from the leased premises under the terms of their new leases or for the alleged conspiracy in preventing him from borrowing money with which to carry on his drilling operations. Therefore the petition for a rehearing will be denied.

Justices WOOD, HUMPHREYS and MEHAFFY dissent.