Leneva Judy HOSEY *v.* Marysue Robinson BURGESS, Executrix of the Estate of Florence R. Watkins, Deceased

94-583                                        890 S.W.2d 262

Supreme Court of Arkansas
Opinion delivered January 9, 1995

*Roscopf & Roscopf, P.A.*, by: *Charles B. Roscopf*, for appellant.

*David Solomon*, for appellee.

JACK HOLT, JR., Chief Justice. This case involves an appeal from a decision by the Phillips County Chancery Court, finding that appellant Leneva Judy Hosey and her late husband, N.R. Hosey, as trustees for the late Florence R. Watkins (whose executrix was appellee Marysue Robinson Burgess), were guilty of self-dealing to the detriment of Mrs. Watkins by subleasing a farm and not giving Mrs. Watkins as the trust beneficiary the benefit of the enhanced rental, and awarding prejudgment interest and attorney's fees. Three issues are raised for reversal: (1)

whether the trial court erred in finding the trustees guilty of self-dealing; (2) whether the trial court erred in depriving the lessees of their benefits under their lease agreement; and (3) whether the trial court erred in awarding the executrix pre-judgment interest for three years (1989, 1990, and 1991) and attorney's fees. On *de novo* review, we have determined that the chancellor was not clearly erroneous in his findings, and we affirm his decision.

Mrs. Burgess, as executrix, presents one issue on cross-appeal: whether the chancellor was clearly erroneous in finding that the estate was to receive only the fair rental value of the trust lands in the subleases. Due to the utter lack of authority offered to support the cross-appeal, we do not consider it.

At the outset, it should be noted that the abstract is deficient in several respects. Neither the will nor the lease appears, despite the centrality of each to the arguments on appeal. Further, the chancellor's findings are inadequately abstracted, although the appellee, Mrs. Burgess, quotes in her brief from two letter opinions at great length in her response to Mrs. Hosey's Point I. This court has the authority to go to the record to affirm a trial court's decision, and we do so in this instance. *Haynes* v. *State*, 314 Ark. 354, 862 S.W.2d 275 (1993).

### Facts

Julian J. Watkins, who owned a farm in Phillips County, Arkansas, married Florence Robinson on March 25, 1975, after the death of his first wife, Lonette Watkins. Several years later, he retired and, on April 10, 1980, entered into a twenty-five-year lease of his property with his daughter by Lonette Watkins, appellant Leneva Judy Hosey, and her husband N.R. Hosey, who owned a substantial farming operation. The lease, which began on January 1, 1980, provided that the property must be used "for the purpose of planting, cultivating and harvesting agricultural crops and for purposes incidental thereto and for no other uses or purposes." Mr. and Mrs. Hosey, as lessees, agreed to make annual payments of $35 per acre for the approximately 400 acres of cultivated land. Among the conditions set forth in the lease was a requirement that the lessees "not assign or sublet said premises, or any part thereof, without the consent, in writing, of Lessor first obtained. . . ."

On March 25, 1982, Julian Watkins executed his last will and testament and a codicil. In it, he named Mr. and Mrs. Hosey his co-executors. He also created a testamentary trust consisting of his land holdings, including the 400 leased acres, to be administered by Mr. and Mrs. Hosey, as trustees, on behalf of his wife:

> 5.1. If my spouse, Florence R. Watkins, survives me, I give, devise, and bequeath all the balance and residue of the real property of which I die seized and possessed to my trustees herein named, in trust, to hold, manage, and invest the same, to collect the income thereon, and to pay to, or apply for the benefit of, my spouse the net income thereof in quarterly or other convenient installments, but at least annually, for and during the term of my spouse's life.
>
> 5.2. Upon the death of my spouse, my trustees shall assign, transfer, and pay over the then principal of this trust to my then living issue, per stirpes.

Among the powers granted Mr. and Mrs. Hosey as co-executors and trustees were the following:

> E. To sell, transfer, convey, or otherwise dispose of any investment or property, real or personal, for cash or on credit, to any person (including my executor, my estate, the trustee of any trust created by me during my life or pursuant to my Will, any such trust, and any beneficiary of my Will or any such trust) in such manner, and upon such terms and conditions as the executor or trustee shall deem advisable;
>
> . . .
>
> J. To manage and operate any real property which shall at any time constitute an asset of my estate or such trust; to make repairs, alterations, and improvements thereto; to insure such property against loss by fire or other casualty; to lease or grant options for the sale of such property, which lease or option may be for a period of time which extends beyond the life of my estate or such trust; and to take any other action or enter into any other con-

tract respecting such property which is consistent with the best interests of the beneficiaries of my estate or such trust;

. . .

S. Generally, with respect to all cash, stocks and other securities and property, both real and personal, received or held by the executor or trustee, to exercise all the same rights and powers as are or may be lawfully exercised by persons owning cash, or stocks and other securities, or such property in their own right;

T. With respect to all of the foregoing powers, to deal with any person, including any beneficiary of my estate or such trust or with such trust, or with the trustee thereof, or with the estate of any such person, or with my estate and executor, without limitation[.]

. . .

AA. To do any and all other things, not in violation of any other terms of this instrument, which, in the judgment of the executor or trustee, are necessary or appropriate for the proper management, investment, and distribution of the assets of my estate or such trust in accordance with the provisions of this instrument, and in the executor's or trustee's judgment are for the best interests of the trust and its beneficiaries. . . .

Julian Watkins died on May 12, 1983, and his last will and testament were admitted to probate. There was no contest, and Mrs. Watkins did not elect to take against the will.

It was determined that the total acreage suitable for cultivation in the tracts of land held in trust amounted to 353.9 acres. Florence Watkins received the net trust income through the estate for the years 1983 and 1984. From 1985 through 1991, Mr. and Mrs. Hosey annually paid $12,386.50 (at the rate of $35 per acre for 353.9 acres) to themselves as trustees and then paid Mrs. Watkins the net after taxes, accounting fees, and other expenses. According to the trust accountant, P.R. Clatworthy, the following sums were paid by the trustees to Mrs. Watkins during the period in question:

| Year | Amount of payment |
|------|-------------------|
| 1985 | $11,460.00 |
| 1986 | $11,371.37 |
| 1987 | $11,371.73 |
| 1988 | $11,455.66 |
| 1989 | $11,437.09 |
| 1990 | $11,387.98 |
| 1991 | $11,366.88 |

In 1989, Mr. Hosey, whose health was declining, ceased active farming. He and Mrs. Hosey, as lessors, entered into a lease with Dixie Hill Farms, a partnership composed of Chris Kale and Clark Hall, as lessee. The lease, which embraced the farmlands owned by Mr. and Mrs. Hosey and involved a sublease of the 400 acres of Julian Watkins's farm, was to run for a three-year term from January 1, 1989, to December 31, 1991. The lease did not specify any rental on a per-acre basis for the two farms, which together contained approximately 1,316.5 acres; instead, the annual rental for all of the property was set at $88,000.

N.R. Hosey died on August 14, 1991, leaving his wife as the surviving trustee of the Watkins trust. In 1992, she entered into another three-year sublease of the trust land, extending through 1994, for the same rental amount.

On November 24, 1992, Mrs. Watkins died, leaving her daughter, appellee Marysue Robinson Burgess, as her sole beneficiary and executrix of her estate. Mrs. Burgess filed suit against Mrs. Hosey on March 5, 1993, seeking to recover the *pro rata* portion of the 1992 trust income and the difference between the rental under the twenty-five year lease and the amount received "at a rental greatly in excess of the rental paid to Florence R. Watkins" under the sublease for the years 1989, 1990, and 1991.

The chancellor found, in a memorandum opinion filed on October 15, 1993, that Mr. and Mrs. Hosey had engaged in self-dealing, which, "although innocent, is still self-dealing and is prohibited by equity, law, and general principles of trust law. The actions of the Hoseys allowed them to benefit from the trust." In the chancellor's view, once Mr. and Mrs. Hosey stopped farming, they could not sublease the farm. While the chancellor recognized that Mrs. Watkins received no less income than she had

received during the period when Mr. and Mrs. Hosey themselves farmed the land, he concluded that "[a]ny profits realized from the leasing of the farm land should have gone to the trust and ultimately to the beneficiary."

The chancellor found that, as trustees, Mr. and Mrs. Hosey did not apply the principles of fiduciary responsibilities in ensuring compliance with the terms of the lease and that they had "no rights under the lease once they stopped farming the land." Further, wrote the chancellor, "the trustees must provide for the beneficiary [Mrs. Watkins] before they provide for the remainder interest holder [Mrs. Hosey]." The chancellor then determined that Mrs. Watkins's estate was entitled to receive $26,655.74 annually for the years 1989, 1990, and 1991 and, in addition, to receive 89.86 percent of the rent for 1992.

Subsequently, in a letter opinion filed on January 3, 1994, the chancellor revised downward the amount due the estate to $18,495.00 for the years 1989, 1990, and 1991, and $16,619.61 for 1992. Moreover, the chancellor reiterated that

> While it is true that the trust created by Mr. Watkins gave broad powers to Mr. and Mrs. Hosey, as trustees, the trust cannot relieve the trustees of those very basic duties that the law imposes. The trustees, as fiduciaries, must always act in the best interest of the beneficiaries.

In its decree entered on February 14, 1994, which incorporated by reference the findings of the two letter opinions, the court awarded $4,300.00 in attorney's fees and a total of $35,017.11 in prejudgment interest. From that decree, this appeal arises.

*Self-dealing and prohibition of sublease;*
*deprivation of trustees' benefit of their lease*

In her first point for reversal, Mrs. Hosey argues that the chancellor erred in finding the trustees guilty of self-dealing. Her second point, concerning the asserted deprivation of the trustees' benefit of their lease, is so closely intertwined with the first that the two may be considered together.

Self-dealing by a trustee or any fiduciary is always suspect, and it is a universal rule of equity that a trustee shall not deal with trust property to his own advantage without the knowl-

edge or consent of the *cestui que trust. Alexander* v. *Alexander,* 262 Ark. 612, 561 S.W.2d 59 (1978).

Mrs. Hosey cites the following exception to the general rule, stated in 76 Am. Jur.2d *Trusts* § 380 (1992), that a trustee, in administering a trust, is under the duty of acting exclusively and solely in the interest of the trust estate or the beneficiaries within the terms of the trust and is not to act in his or her own interest by taking part in any transaction concerning the trust where he or she has an interest adverse to that of the beneficiary:

> An exception exists to the well-recognized rule that a trustee may not place himself in a position where his interest may conflict with the interest of the trust property. When the conflict of interest is contemplated, created, and expressly sanctioned by the instrument, the conflict may be permitted. Thus, there is an exception when the trust clearly evidences the settlor's intent that there be identity between trustees and a corporation partially owned by the trust.

*Id. See also* Bogert, *The Law of Trusts and Trustees,* § 543(U) (Repl. 1993): "In some cases where the settlor knew when his trust was drawn that the trustee whom he proposed to name was then in a position which, after acceptance of the trust, would expose him to a conflict between personal and representative interests, it has been held that there was an implied exemption from the duty of loyalty in so far as that transaction was concerned."

In support of her position, Mrs. Hosey quotes the following language dealing with the exception from *Gregory* v. *Moose,* 266 Ark. 926, 933-34, 590 S.W.2d 665, 670 (Ark. App. 1979):

> There is no question but that self-dealing is a breach of trust and the law will not permit a trustee to deal with trust property to his own advantage and to the detriment of the beneficiaries. But that is not the case in the matter before us. . . . Mr. Bruce gained, obviously, from the sale. But that eventuality was plainly contemplated by the provisions of the Howard will and Mrs. Howard could not have been unmindful of that when her will was made. Mr. Bruce was both a trustee and a beneficiary by design of the settlor, and that duality does not invalidate the sale. It is perfectly permissible for a trustee to also be a beneficiary of

the trust, even though a certain conflict of interest undeniably results. Restatement of Trusts, § 99.

*See also Clement* v. *Larkey*, 314 Ark. 489, 863 S.W.2d 580 (1993), where this court held that the fact of a coincidental benefit to a trustee is not alone sufficient to establish a breach of fiduciary duty on the part of the trustee.

Here, Mrs. Hosey was simultaneously trustee of the Watkins trust and remainder beneficiary under the testamentary trust established in the Watkins will. While the duality of identity is certainly not enough, in itself, to establish a violation of fiduciary duty, the circumstances of this case placed the trustee outside the bounds of fiduciary responsibility. The benefit to Mrs. Hosey was not merely coincidental but was, in fact, a breach of an explicitly defined duty to pay proceeds from the trust property to Mrs. Burgess.

Granted, the powers given Mrs. Hosey as trustee were exceedingly broad, as the sections quoted in the recitation of facts indicate. She was, for instance, empowered to "dispose of any . . . property, real or personal, . . . to any person . . . in such manner, and upon such terms and conditions as the executor or trustee shall deem advisable. . . ." Yet this general language was subject to the specific, overriding terms of § 5.1 in Mr. Watkins's will, quoted earlier, in which the testator clearly set forth the extent of the duties of the trustees of the testamentary trust: "to hold, manage, and invest the same [real property], to collect the income thereon, and *to pay to, or apply for the benefit of, my spouse the net income thereof. . . .*" (Emphasis added.)

This court held, in *Hardy* v. *Hardy*, 222 Ark. 932, 940, 263 S.W.2d 690, 694 (1954), that:

> A trustee is at all times disabled from obtaining any personal benefit, advantage, gain, or profit out of his administration of the trust. . . . Any benefit or profit obtained by the trustee inures to the trust estate, even though no injury was intended and none was in fact done to the trust estate[.]

In the present case, Mrs. Hosey and her late husband, however innocently, failed to adhere to the creating instrument's express directive that they apply the entire net income of the subject property to the benefit of Mrs. Watkins for her life. By the terms

of the will, they were prohibited from deriving any personal monetary benefit from the 400 acres.

In *Riegler* v. *Riegler,* 262 Ark. 70, 553 S.W.2d 37 (1977), we upheld a decree ordering the removal of a trustee who had violated his duty. The removal was premised on the trustee having exceeded the bounds of his authority in trust matters: "Without any authority from the trust instrument and without seeking approval from chancery court, appellee, as trustee, used trust funds to purchase unproductive vacant land of no value to the trust but in which he was personally interested." 262 Ark. at 75-6, 553 S.W.2d at 40. Here, whatever latitude was allowed in the area of management and investment by the will's grant of general powers to the trustees, the authority to dispose of income from the property was strictly limited.

Moreover, the 1980 lease contained an absolute prohibition against using the subject property for any other purpose than "planting, cultivating and harvesting agricultural crops" or "purposes incidental thereto." It also forbade subletting in the absence of written permission from Mr. Watkins. As the chancellor pointed out in his October 1993 letter opinion, once Mr. and Mrs. Hosey ceased farming the leased land, the lease was effectively terminated. According to the default provisions of the lease, in the event of failure on the part of the lessees "to do or perform any other of the covenants . . . herein contained, or shall violate in any particular any of the conditions hereof," the lessor had the right to terminate the lease and take possession of the property. Hence, the lease was subject to invalidation by the failure of the lessees to continue the farming operation, and, having stepped into the lessor's shoes by virtue of his death, Mr. and Mrs. Hosey had the duty to terminate the lease. Having sublet the property, however, the Hoseys, as the chancellor recognized, were under a fiduciary obligation as set forth in § 5.1 of the Watkins will to apply all proceeds from the sublease to the trust for the benefit of Mrs. Watkins.

We hold that the chancellor's findings that Mrs. Hosey and her husband engaged in self-dealing, albeit innocent and unintentional, were not clearly erroneous.

*Attorney's fees and prejudgment interest*

Under *Liles* v. *Liles,* 289 Ark. 159, 711 S.W.2d 447

(1986), attorney's fees may be awarded for a trustee's breach of trust. As the findings of the chancellor have been affirmed, the award of attorney's fees was appropriate. Moreover, the present case meets the test for prejudgment interest set forth in *Kutait* v. *O'Roark*, 305 Ark. 538, 809 S.W.2d 371 (1991) — a method exists for fixing the exact value on the cause of action at the time of the occurrence giving rise to the cause of action.

*Cross-appeal:*
*Fair rental value*

Mrs. Burgess cites absolutely no authority in her point on cross-appeal. She contends that the chancellor erred in finding that she was to receive only the fair rental value of the trust lands in the subleases. This resulted from the chancellor's correction in his second letter opinion of the drafting error contained in his first. Mathematical calculations on Mrs. Burgess's part do not supply the place of legal authority. We do not consider the issue.

Affirmed.