In re Cynthia FOOTE d/b/a
Tomorrow's Child Educare
Academy, Debtor.

Staffmark Investment LLC, Movant,

v.

Cynthia Foote d/b/a Tomorrow's Child
Christian Educare Academy, Debtor;
and Joyce Bradley Babin, Chapter 13
Trustee, Respondents.

No. 4:02–BK–11975 E.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 3, 2002.

Sheila Campbell, P.A., Little Rock, AK, for debtor and respondent.

Robert W. George, Kutak Rock, LLP, Fayetteville, AK, for movant.

Natasha Graf, Little Rock, AK, for Joyce Bradley Babin, Chapter 13 Trustee.

### ORDER GRANTING MOTION FOR RELIEF FROM STAY.

AUDREY EVANS, Bankruptcy Judge.

The issue before the Court is whether the Debtor has an interest in a certain sublease of nonresidential real property such that the automatic stay precludes the sublessor, Staffmark Investment, LLC ("Staffmark"), from pursing an unlawful detainer action against Debtor in state court. A hearing was held on Staffmark's Motion For Relief From the Automatic Stay on March 21, 2002, and the Court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), although principles of state law govern the outcome. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

This Court finds that the Debtor's lease terminated prior to the commencement of

the case. Therefore, the leasehold is not property of the estate under 11 U.S.C. § 541(b)(2), and the automatic stay does not preclude Staffmark from regaining possession of the property pursuant to 11 U.S.C. § 362(b)(10).

## FACTS

Staffmark is the lessee with respect to certain commercial real property located at 6724 I–30 Frontage Road, Little Rock, Arkansas (the "Premises") under a lease agreement dated August 6, 1999 between Staffmark and Willard Le Vine (the "Prime Lease"). Debtor subleased the Premises from Staffmark pursuant to a Sublease Agreement dated February 5, 2001 (the "Sublease"). Pursuant to the Sublease, Debtor agreed to be bound by the terms of the Prime Lease. Debtor was also obliged to pay monthly rent of $4,500.00 from February 1, 2001 through December 31, 2001, and monthly rent of $5,000.00 from January 1, 2002 through December 31, 2002, with periodic rent increases thereafter. Pursuant to section 17.1 of the Prime Lease, nonpayment of rent constitutes a default, and under section 17.3 of the Prime Lease, the lessor has the immediate right to terminate the Sublease at its option and pursue whatever rights and remedies it has fifteen days after the due date of the rent. Section 23 of the Prime Lease provides that if the lessee remains in possession of the Premises after expiration of the lease's term with the lessor's consent, the lessee's occupancy is a month-to-month tenancy.

The parties stipulated that Debtor became delinquent in her rent payments in April of 2001. The parties further stipulated that Staffmark served Debtor with a Notice to Quit and Demand for Possession on September 24, 2001 that informed Debtor of the Sublease's termination and requested the Debtor to vacate the Premises. The Debtor did not vacate the Premises, and on December 3, 2001, Staffmark sued Debtor in Pulaski County Circuit Court for unlawful detainer (the "Unlawful Detainer Action"). On January 23, 2002, the Court entered an Order agreed to by the parties finding that Staffmark is entitled to possession of the Premises due to Debtor's failure to pay rent in accordance with the Sublease (the "Agreed Order"). The Agreed Order instructed the Clerk of Court to issue a writ of possession in favor of Staffmark upon Staffmark's request. However, pursuant to the Agreed Order, Staffmark agreed to forbear from executing a writ of possession and taking possession of the Premises provided Debtor satisfied certain conditions. One condition was that Debtor provide Staffmark with a certificate of insurance reflecting insurance coverage on the Premises by January 21, 2002. Another condition was that Debtor pay Staffmark $30,000.00 by February 14, 2002 to be applied to rental arrearages and attorneys' fees incurred by Staffmark. Debtor was also required to pay Staffmark $4,000.00 rent for the month of February. The Agreed Order provided that Staffmark was entitled to execute a writ of possession and take immediate possession of the Premises without further notice, hearing or order upon Debtor's failure to satisfy any of the listed conditions.

When Staffmark did not receive a certificate of insurance for the Premises by January 21, 2002, it obtained a writ of possession from the Clerk of Court. Following receipt of the certificate of insurance soon thereafter, Staffmark agreed to forbear the writ's execution until February 14, 2002 to allow the Debtor time to comply with the Agreed Order's remaining conditions. Debtor testified that she attempted to wire the $4,000.00 February rental payment prior to February 14, 2002 but that she did not make the $30,000.00

payment as required by the Agreed Order. The parties dispute whether the writ of possession was properly served on Debtor thereafter, and no evidence of service was presented to the Court. However, according to the parties' stipulations, the Sheriff scheduled Debtor's eviction from the Premises on February 20, 2002. Debtor filed for relief under Chapter 13 of the Bankruptcy Code on the same day.

## DISCUSSION

■■■ Staffmark seeks relief from the automatic stay so that it can proceed with the Unlawful Detainer Action and obtain possession of the Premises. Staffmark asserts that Debtor has no interest in the Sublease because it was terminated prior to commencement of the bankruptcy case. The Debtor asserts that the Agreed Order constituted a new agreement in the form of an "accord and satisfaction" such that the Sublease was not terminated prior to the Debtor's Chapter 13 filing, and that the Debtor has the option to assume the lease under 11 U.S.C. § 365(a).

### 1. Treatment of Nonresidential Real Property Leases in Bankruptcy.

■■■ A debtor's bankruptcy estate consists of all legal and equitable interests of the debtor existing at the commencement of the bankruptcy case. 11 U.S.C. § 541(a). A leasehold interest may constitute property of a debtor's estate, and the debtor may assume or reject such a lease under 11 U.S.C. § 365(a). However, a lease of nonresidential real property that has terminated prior to the bankruptcy's filing is excluded from the debtor's estate under 11 U.S.C. § 541(b)(2). Because the debtor has no interest in a validly terminated lease, the automatic stay does not preclude a lessor from taking possession of property leased to a debtor under a terminated nonresidential real property lease.

11 U.S.C. § 362(b)(10). Accordingly, it is not necessary for the lessor to move for relief from stay in order to regain possession of nonresidential real property held by a debtor under a terminated lease. *See In re Neville*, 118 B.R. 14, 18 (Bankr. E.D.N.Y.1990).

■■■ Likewise, a leasehold interest that has been terminated prior to an order for relief may not be assumed or rejected by the debtor under 11 U.S.C. § 365(c)(3). "If the contract or lease has expired by is own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the [debtor] to assume or [reject]." *In re Huffman*, 171 B.R. 649, 653 (Bankr. W.D.Mo.1994). "However, the termination must be complete and not subject to reversal, either under the terms of the contract or under state law." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212 (7th Cir.1984) (*citing* L. King, 2 Collier on Bankruptcy ¶ 365.03 (15th ed.1979) and *In re Fontainebleau Hotel Corp.*, 515 F.2d 913 (5th Cir. 1975)).

### 2. Did the Sublease Terminate Pre–Petition?

■■■ Whether a lease has terminated is a question of state law. *See In re Kong*, 162 B.R. 86, 91 (Bankr.E.D.N.Y.1993). The exact time at which a lease has been terminated may be difficult to establish, especially if eviction proceedings have begun but not been completed prior to the bankruptcy filing. *In re Escondido West Travelodge*, 52 B.R. 376, 378 (S.D.Cal.1985) (*citing* B. Weintraub & A. Resnick, Bankruptcy Law Manual § 7.10[1]).

■■■ Under Arkansas law, a lease may terminate by breach or forfeiture under its terms. *See Henry v. Gulf Refining Co., et al.*, 179 Ark. 138, 15 S.W.2d 979 (1929) (lease automatically became null and void upon the non-occurrence of an

event required by the lease's terms); *see also Hosey v. Burgess,* 319 Ark. 183, 890 S.W.2d 262 (1995) (upon default, lease is effectively terminated). Although Arkansas law provides that a lease is automatically terminated at the expiration of its stated term, *In re Baugh,* 60 B.R. 102 (Bankr.E.D.Ark.1986), that a month-to-month tenancy is terminated upon thirty days' written notice ending with a monthly period, *Hastings v. Nash,* 215 Ark. 38, 219 S.W.2d 225 (1949), and that a year-to-year tenancy is terminated upon six months' written notice ending with a yearly period, *Dover v. Henderson,* 195 Ark. 496, 112 S.W.2d 963 (1938), the Court could not find authority under Arkansas law for the exact moment a lease terminates upon default of its terms in absence of a lease provision dictating exactly when the lease terminates. The Restatement of Property provides that where a default gives one party an option to terminate the lease, the termination occurs one minute before midnight on the date the other party receives notice that the option has been exercised. Restatement (Second) of Property, Land. & Ten., § 1.7(f) (1976 Main Vol.).

Under sections 17.1 and 17.3 of the Prime Lease, Staffmark had the option to terminate the lease for nonpayment of rent fifteen days after the due date of the rent. Neither the Prime Lease nor the Sublease specify what type of notice is required to terminate the lease. However, the parties stipulated that Staffmark served Debtor with a Notice to Quit stating that Staffmark was terminating the Sublease and requesting the Debtor to vacate the premises. The Debtor also testified that she recalled receiving this notice. Debtor had no right to cure her default under the Prime Lease or the Sublease. Additionally, Arkansas' unlawful detainer statute (Ark.Code Ann. § 18–60–301, *et. seq.*), under which the Agreed Order was entered, does not provide a tenant with an opportunity to cure a default prior to the issuance of a writ of possession. Accordingly, the Court finds that the Sublease was effectively terminated upon the Debtor's receipt of Staffmark's Notice to Quit on September 24, 2001, almost five months before the Debtor filed bankruptcy. The question before the Court then becomes whether the parties reached a new agreement in the Agreed Order that provided the Debtor with a continued leasehold interest in the Premises.

### 3. Did the Agreed Order Constitute An Accord and Satisfaction or Otherwise Provide Debtor With A Continued Leasehold Interest in the Premises?

 Debtor asserts that she retains a leasehold interest in the Premises because a writ of possession was not served on Debtor before she filed this bankruptcy case. Debtor maintains that through the Agreed Order, the parties entered into a new agreement in the form of an "accord and satisfaction" which granted Debtor a continued leasehold interest in the Premises. Debtor asserts that while she breached the new agreement, no action has been brought by Staffmark with respect to that breach. For the reasons provided herein, the Court finds Debtor's arguments unpersuasive.

 An accord and satisfaction occurs when parties reach an agreement whereby the payment of less than the total amount due satisfies a debt in full. One party must agree to pay and the other party must agree to receive "a different consideration or a sum less than the amount to which the latter is or considers himself entitled." *Dyke Indus., Inc. v. Waldrop,* 16 Ark.App. 125, 127, 697 S.W.2d 936, 937 (1985) (*citing Jewell v. General Air Conditioning Corp.,* 226 Ark. 304, 308, 289 S.W.2d 881, 883 (1956)). Where there

is an accord, part performance does not constitute satisfaction. " 'Accord and part performance do not constitute satisfaction. It is merely executory so long as to its terms something remains.' " *National Bank of Commerce of El Dorado v. L.D. McMullan, et al. (In re L.D. McMullan)*, 196 B.R. 818, 824 (Bankr.W.D.Ark.1996) (*quoting General Air Conditioning Corp. v. Fullerton*, 227 Ark. 278, 282, 298 S.W.2d 61, 64 (1957)).

The Agreed Order does not constitute an accord and satisfaction. Staffmark did not agree to accept a specific payment in lieu of all its claims. Rather, Staffmark agreed to allow Debtor to remain in possession of the Premises if certain conditions were met. The Agreed Order specifically states that it is not a final adjudication of the parties' rights and that the court reserves jurisdiction to consider the remaining issues in the case including Staffmark's request for the entry of a money judgment against Debtor. Accordingly, Staffmark did not agree to take a specific payment or action in satisfaction of a larger debt. Moreover, the conditions set forth in the Agreed Order were not all met, and therefore, there was only part performance, resulting in no satisfaction. Under the Agreed Order, Staffmark had the immediate right to regain possession of the Premises upon the Debtor's failure to comply with the conditions set forth in the Agreed Order. Debtor did not comply with all of those conditions, and the sheriff scheduled her eviction for February 20, 2002, the day Debtor filed bankruptcy. In short, when the Debtor filed bankruptcy, she had no interest in the Premises: she had no rights under the Sublease because it had terminated on September 24, 2002, and she had no right to retain possession of the Premises because she failed to comply with the Agreed Order by February 14, 2002.

The Agreed Order did not otherwise revive or extend the previously terminated Sublease. The Agreed Order simply allowed the Debtor to retain possession of the Premises for a specific period of time in order to allow the Debtor to pay the rent arrearages and comply with the other provisions of the Agreed Order. If Debtor had complied with the Agreed Order, she could have retained possession to the Premises but would not automatically regain her rights under the Sublease and Prime Lease. Rather, the Debtor would be a holdover month-to-month tenant with the lessor's consent pursuant to section 23 of the Prime Lease.

For these reasons, the Court finds that the Agreed Order had no effect on the Sublease's prior termination, and the Debtor has no continuing leasehold interest in the Premises.

## CONCLUSION

The Court finds that the Sublease is excluded from the Debtor's bankruptcy estate under 11 U.S.C. § 541(b)(2), the Sublease is not subject to the automatic stay pursuant to 11 U.S.C. § 362(b)(10), and that Debtor has no authority to assume or reject the Sublease under 11 U.S.C. § 365(c)(3). Staffmark's Motion for Relief From Stay is hereby GRANTED.

**IT IS SO ORDERED.**