SLIP OPINION



Cite as 2016 Ark. App. 133

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-630

| | |
|---|---|
| RIKKA I. PULLIAM<br>APPELLANT | **Opinion Delivered** March 2, 2016 |
| V. | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. CV-14-116] |
| SHERRY P. MURPHY, R. CARTER PULLIAM, AND RICHARD PULLIAM, AS COTRUSTEES OF THE RAY H. PULLIAM LIVING TRUST<br>APPELLEES | HONORABLE VICTOR L. HILL, JUDGE<br><br>REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

Appellant Rikka I. Pulliam filed a complaint against appellees Sherry P. Murphy, R. Carter Pulliam, and Richard Pulliam, as cotrustees of the Ray H. Pulliam Living Trust, alleging breach of the trust agreement. The Crittenden County Circuit Court granted summary judgment to appellees. On appeal, Rikka argues that appellees owed a duty of loyalty to her in their administration of the trust and that genuine issues of material fact exist as to whether they breached that duty. We reverse and remand for trial.

### I. *Background and Procedural History*

In June 1997, Ray H. Pulliam and Ione O. Pulliam created a living trust involving 1,320 acres of farmland for the benefit of their five adult children. After the Pulliams had passed away, four of those children, including Rikka, became cotrustees. Article Seventeen, section five of the trust provided,

> Special Instructions Regarding the Farm. During my life, my spouse and I have owned tracts of land which we have referred to among ourselves and our family as "the farm." The farm is the real property to be administered under Article Eleven of this agreement upon the death of both my spouse and I. One and a half acres of the farm was sold to our son, R. Carter Pulliam, for consideration of $7,500 ($5,000 per acre) during my lifetime. *My Trustee shall offer to any of my other children the same privilege to purchase one and a half acre of land at the same consideration.* The consideration need not be actual cash but may also be improvements or work on the farm, for example, but any construction must be farm related. In other words, the construction cannot be a garbage dump, gravel storage or beer parlor, etc.

(Emphasis added.)

In addition to owning the tract of land referenced in the trust agreement, Carter, along with Richard, leased trust property that they farmed.

In November 2013, Rikka's lawyer notified appellees of Rikka's request to buy a one-and-a-half-acre tract along Highway 79 located just north of Carter's one-and-a-half acres. Carter objected to selling Rikka that particular tract because the area was used for parking farm equipment and provided access for commercial trucks to reach the granary silos on his property. Sherry had initially agreed to sell Rikka the tract of land but soon after rescinded her consent to the sale after speaking with Carter, citing the land's "current use in farming" as her reason for rescission. Richard did not object to Rikka's request to buy the tract at issue. A meeting of the cotrustees was held in January 2014. Article Sixteen, section eight of the trust provides that

> [w]hen more than two Trustees are acting, the concurrence and a joinder of a majority of my Trustees shall control in all matters pertaining to the administration of any trust created under this agreement.

Carter and Sherry voted against the sale, while Rikka and Richard voted in favor of the sale, resulting in a tie vote. Having failed to achieve a majority of votes, Carter and

SLIP OPINION

Sherry asked Rikka to select another tract of land to purchase, but Rikka refused.

Sherry, as president of the Board of Trustees (Board), sent a letter to Rikka's attorney in February 2014 informing him that the Board had voted against the sale of that particular tract following a thorough review of "the land's history, current use in farming, and implications if removed from farming operation." Sherry also pointed out that the Board had progressed to the business of managing a farm and that Rikka had never been actively involved in farming the land.

In April 2014, Rikka filed a complaint against the other cotrustees alleging that they had intentionally blocked the transfer of land because it would inconvenience Carter's separate farming operations; that they had willfully and intentionally failed to carry out the terms of the trust in an attempt to deprive her of property to which she had the right to purchase as a beneficiary; and that they had breached the trust agreement by refusing to transfer the property.

Carter and Sherry moved for summary judgment. Attached to their motion was Carter's affidavit in which he attested that the one-and-a-half-acre tract of land Rikka had requested to purchase had been improved for use as a parking and staging area for farm equipment; the land had also been improved for, and served as, a pass-through for commercial trucks entering the granary; and the tract was directly adjacent to "the grain silos and storage sheds used in the Trust farming operations." According to Carter, if that particular tract of land was sold to Rikka, a new site would have to be improved for parking the farm equipment, and relocating the access road to the granary would necessitate taking

other trust property currently devoted to growing rice and beans, causing a loss to the trust.

In response to the motion for summary judgment, Rikka contended that appellees, as cotrustees, had breached their duty of loyalty to her as a beneficiary. She presented her own affidavit attesting that the land she had requested to purchase was known as "the pasture"; that there had been no improvements to that land; that the trust did not engage in any "farming operations" except to lease land to Carter and Richard for their personal farming operations; and that the land Carter and Sherry offered to sell her, in lieu of purchasing the tract at issue, was inferior in that it was in an inconvenient location, was accessible only by a gravel road shared with heavy equipment, overlooked junk cars, and was otherwise not worth $5,000 an acre.

## II.   *Trial Court's Order*

In granting summary judgment to Carter and Sherry, the trial court found that the trust did not provide that a beneficiary was entitled to purchase a tract of her choosing over the objections of the other cotrustees; that there was no provision in the trust as to what happened in the event of a tie vote; that appellees were correct in their reading of the trust; and that Rikka must select another tract of land that the majority of the trustees agree to sell to her.

## III.   *Standard of Review*

The appellate courts have repeatedly held that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Cole v. Laws*, 349 Ark. 177,

76 S.W.3d 878 (2002). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id*. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id*. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Id*.

IV. *Arguments*

Rikka asserts that appellees, as cotrustees, breached their duty of loyalty to her by placing their own personal interests above those of the beneficiaries. Rikka contends that Carter had a conflict when he voted against selling her the tract at issue in that the farm equipment and grain silos are his personal property. According to Rikka, selling that tract would inconvenience Carter. Rikka maintains that the trust has no farming operations and that the farming operations referred to by Carter and Sherry are Carter's personal farming operations. Rikka maintains that genuine issues of material fact remain to be tried regarding this conflict.

Carter and Sherry argue that they owed no duty to sell Rikka a specific tract of land, especially when that sale would be detrimental to the remaining beneficiaries. They maintain

that they administered the trust according to its terms and that, when no majority was achieved, they had no authority to sell Rikka the tract of land she had requested. Carter and Sherry also argue that selling the tract of land to Rikka would have immediate adverse financial effects in that the trust would be required to improve another tract of land for the same purpose that the tract at issue currently serves, that the trust would permanently lose cultivated land, and that there would be increased fuel costs for rerouting trucks and moving the farm equipment to a more remote location.

## V.  *Duty of Loyalty*

Arkansas Code Annotated section 28-73-802(a) (Repl. 2012) provides that a trustee shall administer the trust solely in the interests of the beneficiaries. Section 28-73-802(b) provides that a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless, among other things, the transaction was authorized by the terms of the trust.

It is permissible for one of several trustees or a sole trustee also to be one of several beneficiaries of a trust, even though conflicts of interest and coincidental benefits to that trustee-beneficiary result. *Clement v. Larkey*, 314 Ark. 489, 853 S.W.2d 580 (1993). The fact of a coincidental benefit to a trustee is not alone sufficient to establish a breach of fiduciary duty on the part of the trustee. *Id*. The general rule is that a trustee, in administering a trust, is under the duty of acting exclusively and solely in the interest of the trust estate or the

beneficiaries within the terms of the trust and is not to act in his own interest by taking part in any transaction concerning the trust where he has an interest adverse to that of the beneficiary. *Hosey v. Burgess*, 319 Ark. 183, 890 S.W.2d 262 (1995).

## VI. *Discussion*

While we agree that the trial court correctly construed the trust agreement to require a majority of the trustees to take action, that is not the end of the analysis. The actions of the trustees are subject to review under the limitations and fiduciary obligations imposed by the statutes and case law referenced above. Here, the trial court did not engage in such an analysis. The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 1 S.W.3d 531 (2000).

As a preliminary matter, resolving all doubts and inferences in favor of Rikka, a plain reading of the trust agreement's special instructions for the farm does not bar Rikka from purchasing any one-and-a-half-acre tract of land. The instructions read as follows: "My Trustee shall offer to any of my other children the same privilege to purchase one and a half acre of land at the same consideration." The directive contains the mandatory word "shall," and there is no limiting language in "privilege to purchase one and a half acre of land."

Rikka has presented issues of material fact to be tried concerning the conflict between Carter's fiduciary and personal interests and how it may have affected his vote preventing Rikka from purchasing the one-and-a-half-acre tract adjoining his land. When there are genuine questions of material fact with regard to a party's intent, summary judgment is

improper. *Bisbee v. Decatur State Bank*, 2010 Ark. App. 459, 376 S.W.3d 505. Moreover, summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Bomar v. Moser*, 369 Ark. 123, 251 S.W.3d 234 (2007). There are additional disputed issues of fact, e.g., whether and how Carter's personal farming operations benefit the trust and whether the tract at issue was improved, and if so, whether it was improved for a purpose that benefits the trust, as opposed to Carter personally.

For the reasons stated above, summary judgment in this case was inappropriate.

Reversed and remanded.

GLADWIN, C.J., agrees.

GRUBER, J., concurs.

*Womack, Phelps & McNeill, P.A.*, by: *B. Wade Bowen*, for appellant.

*Michael D. Snell*, for appellees.

8